SOUTHERN SURETY COMPANY *v*. STATE, EX REL. TRAVELERS INSURANCE COMPANY.

[No. 13,320. Filed March 14, 1929. Rehearing denied May 28, 1929. Transfer denied November 19, 1929.]

*Slaymaker, Turner, Merrell, Adams & Locke,* for appellant.

*Pickens, Cox, Conder & Bain,* for appellee.

NICHOLS, J.—Suit upon two bonds executed by Baker, Agerton and Thompson, Incorporated, as principal, and Southern Surety Company as surety, covering two con-

tracts entered into between the board of commissioners of Noble county, Indiana, and Baker, Agerton and Thompson, Incorporated, for the construction of two separate roads in that county, known respectively as "the Rich road" and "the Krieger road," which action sought to recover a proportionate share of premium due, as alleged, from the Baker company, on account of two insurance policies issued by Travelers Insurance Company, relator, covering the compensation liability to employees and general liability to the public of the Baker company as contractors, in their construction work in carrying out several road contracts which they had in Indiana and Illinois, including the two contracts in Noble county, Indiana.

After trial, there were special findings, on which the court stated conclusions of law in favor of relator, on which judgment was rendered in favor of appellee and against the Baker company and appellant for $984.54, from which this appeal. The respective conclusions of law are assigned as error.

On May 15, 1923, relator issued its workmen's compensation and employers' liability policy of insurance to the Baker company, insuring the latter against bodily injury claims of employees, as specifically provided in said policy, in connection with its work as a contractor, and, on May 15, 1922, relator issued its public liability policy of insurance to the Baker company, which policy, at its date of expiration, May 15, 1923, was extended in force for an additional year, and which policy insured the Baker company against claims for bodily injury sustained by persons other than its employees in connection with its business as a contractor. During the policy periods, the Baker company was engaged in building and constructing streets and roads in various places in Indiana and Illinois, including Noble county, Indiana, Connersville, Indiana, and in the cities of

Springfield and Pana, Illinois; and said policies of insurance extended to and covered all of the business operations of the Baker company during the policy period.

On September 6, 1922, the Baker company entered into two separate contracts with the board of county commissioners of Noble county, Indiana, for the construction, respectively, of two roads, generally known as "the Rich road" and "the Kreiger road." Appellant executed, as surety, on behalf of the Baker company as principal, two separate bonds covering respectively said contracts. The condition of said bonds was for the faithful performance of said contracts and that the principal "shall pay all debts contracted by said principal in the prosecution of said work, including labor and material furnished." The Baker company thereafter entered upon the performance of said contracts and proceeded with the construction of said roads until on or about February 15, 1924.

The amount of the premium on each of the above policies was based upon the amount of the payroll of the employees of the Baker company. In the workmen's compensation and employers' liability policy, it was provided that the premium should be based on the rate per $100 of payroll, depending upon the kind of work upon which the various classes of employees were engaged: For road and street work in Indiana, the rate was $2.34 per $100 of payroll; for Illinois, $2.51 per $100 of payroll; for clerical and office employees and draftsmen engaged in office duty, the rate was $.06 per $100 of payroll; for drivers and drivers' helpers in Indiana, the rate was $2.12 per $100 of payroll, in Illinois, $1.66 per $100 of payroll; for chauffeurs and chauffeurs' helpers in Indiana, $1.74 per $100 of payroll, and in Illinois, $1.29 per $100 of payroll. In the public liability policy, the rate per $100 of pay-

roll was $.85. There was an advance premium of $28 paid by the Baker company on the workmen's compensation and employers' liability policy. During the period of the said policy contracts, the remuneration earned by the employees of the Baker company was as follows:

Employees working on the Rich road... $10,286.01
Employees working on the Kreiger road. 22,894.64
Employees working in Connersville,
    Indiana........................ 5,815.79
Employees working in Pana, Illinois.... 33,024.56
Employees working in Springfield,
    Illinois........................ 30,204.96
Employees working in Indianapolis yard 1,884.68
Salesmen........................ 2,800.00
Office Payroll................... 1,328.26

It was further found by the court that the following amounts respectively were the reasonable value for that part of the protection afforded to the Baker company in connection with each policy and road as specified:

$240.68 for compensation policy on Rich road
$535.74 for compensation policy on Kreiger road
$ 87.43 for liability policy on Rich road
$194.60 for liability policy on Kreiger road

The court also found that, prior to the filing of the complaint herein, appellee had requested and demanded of appellant payment of said part of premiums and that it had refused to pay the same.

On such state of facts, the lower court concluded that appellee was entitled to recover from appellant $984.54.

Whether appellee is entitled to recover from appellant on the bonds sued on depends upon the question of whether it can be said that the fractional part of the premium on said policy contracts, the amount of which is determined by using as a basis a payroll of the work-

men on the Rich and Kreiger roads, constitutes a debt contracted by the Baker company in the prosecution of the work in building the Rich and Kreiger roads. It is the contention of appellant that such fractional part of the premium on said policy contracts cannot be so regarded.

Appellee contends that the indebtedness for protection afforded by the workmen's compensation and employers' liability insurance policy was incurred in the prosecution of the work and that such indebtedness sustained an intimate, immediate and exclusive relation to it.

We do not agree with appellee's contention to the effect that appellant's principal, the contractor, not having exempted itself from the operation of the compensation act, was therefore required to carry employers' liability insurance, the premium for which was chargeable against appellant under the terms of its bond. It was for appellant's principal, under the statute, to elect whether it would carry compensation insurance, or whether it would exempt itself from carrying such insurance under the provisions of §68 *et seq.* of the Workmen's Compensation Act, Acts 1915 p. 392, as amended by Acts 1919, ch. 57, being §9513 Burns 1926. It appears that the contractor did not, at any time, make any application to the Industrial Board for a certificate authorizing him to carry his own risk of paying compensation, and it does not appear that the contractor was not fully able to comply with the provisions of the statute and to receive from the Industrial Board a certificate of his compliance therewith. So far as appears by the record, the matter of carrying employers' liability insurance may have been a matter of expediency and safety rather than of necessity. It cannot be said that the expense incurred by way of the premium for the employers' liability policy was necessarily incurred in the prosecution of the work. So far as appears by the record, such work could have

been prosecuted and completed without the expense incurred for the liability insurance. The policies involved were blanket in their character, covering numerous contracts in the states of Indiana and Illinois, and the premium paid was one entire premium, without any reference whatever to the employees engaged under the several contracts. The original policy of insurance for public liability was written on or about May 15, 1922, or about four months before the contracts which are supported by the bonds in suit were executed, and certainly could not have been issued in contemplation of these particular contracts.

Both appellant and appellee have cited, and rely upon, the case of *Title Guaranty, etc., Co.* v. *State, ex rel.* (1915), 61 Ind. App. 268, 109 N. E. 237, 111 N. E. 19. The bond involved in that case was similar in its conditions to the ones here involved, and the court said, on page 279, that: "The purpose as expressed by the bond is to secure the payment of such debts incurred in the prosecution of the work. Among such debts are those growing out of labor performed and material furnished. But if there are other debts, regardless of their nature or origin, that sustain such an intimate, immediate and exclusive relation to the building of the road that it may be said that such debts were incurred in the prosecution of that work, they too are covered by the provisions of the bond literally interpreted." The claims in that case were for labor and material furnished by a large number of persons to the contractor, which claims had been assigned and transferred to the Levenworth State Bank which had paid full value therefor. This court rightly held, in that case, that such debts were incurred in the prosecution of the work, but, in holding that debts, regardless of their nature or their origin, that sustain such an intimate, immediate and exclusive relation to the building of the road that it may be said that they were

incurred in the prosecution of the work, is holding, in effect, that if they had not sustained such an intimate, immediate and exclusive relation to the building of the road, then they were not incurred in the prosecution of the work. The claim here involved did not sustain an intimate, immediate and exclusive relation to the work, so as to make it a debt incurred in the prosecution of the work. See *Herman Tapp Const. Co.* v. *Paul* (1921), 77 Ind. App. 305, 131 N. E. 536, 132 N. E. 620.

The judgment is reversed, with instructions to the court to restate its conclusions of law in harmony with this opinion.