No. 34,220

Lumbermen's Mutual Casualty Company, *Appellant*, v. The H. W. Underhill Construction Company and The United States Guarantee Company, *Appellees*.

(88 P. 2d 1107)

Opinion filed April 8, 1939.

*W. E. Holmes, Mark H. Adams, Howard L. Baker, Charles E. Jones* and *Edward F. Arn*, all of Wichita, for the appellant.

*A. M. Ebright, P. K. Smith, Bernard Peterson, Richard A. Hickey*, all of Wichita, for the appellees.

*Claude I. Depew, W. E. Stanley, Lawrence Weigand, William C. Hook, Sidney J. Brick* and *Lawrence Curfman*, all of Wichita, as *amici curiae*.

The opinion of the court was delivered by

Allen, J.: This was an action to collect premiums on policies of insurance issued by plaintiff to the H. W. Underhill Construction Company. The trial court having sustained a demurrer to the petition, plaintiff brings this appeal.

Two causes of action were stated in the petition, the first, to recover $21.56; the second, to recover $923.13. Since the facts on which the issues are raised in each cause of action are practically the same, for brevity we shall refer only to the facts in the second cause of action.

On November 5, 1936, a contract was entered into by the H. W. Underhill Construction Company with the city of Parsons, under which contract the construction company agreed to build a stadium for the city of Parsons, for a consideration of $29,283. The construction company gave a bond for the faithful performance of the contract. The bond which was executed by the defendant, the

United States Guarantee Company as surety, made reference to the contract, and provided:

"Now, therefore, if the said principal or the subcontractor or subcontractors of said principal shall faithfully perform and observe all the terms and conditions of the contract for the construction or making of the above-described improvement, this bond shall be void; otherwise, it shall remain in full force and effect."

The contract between the contractor and the city of Parsons provided:

"ART. 22. *Guaranty Bonds.* The contractor will be required to give bond covering the faithful performance of the contract and the payment of all obligations arising thereunder, in such form as the owner may prescribe and with such sureties as he may approve."

"ART. 5. Before issuance of final certificate, the contractor shall submit evidence satisfactory to the architect that all pay rolls, material bills, and other indebtedness connected with the work have been paid."

"ART. 20. *Liability Insurance.* The contractor shall maintain such insurance as will protect him from claims under workmen's compensation acts and from any other claims for damages for personal injury, including death, which may arise from operations under this contract: . . ."

The construction regulations of the Federal Emergency Administration of Public Works, which are made a part of the general conditions and specifications and included therein, in part provide:

"6. Insurance. The contractor shall not commence work under this contract until he has obtained all insurance required under this paragraph and such insurance has been approved by the owner and the state director, nor shall the contractor allow any subcontractor to commence work on his subcontract until all similar insurance required of the subcontractor has been so obtained and approved.

"(a) Compensation insurance. The contractor shall take out and maintain during the life of this contract adequate workmen's compensation insurance for all his employees employed at the site of the project and, in case any work is sublet, the contractor shall require the subcontractor similarly to provide workmen's compensation insurance for the latter's employees, unless such employees are covered by the protection afforded by the contractor. In case any class of employees engaged in hazardous work under the contract at the site of the project is not protected under the workmen's compensation statute, or in case there is no applicable workmen's compensation statute, the contractor shall provide, and shall cause each subcontractor to provide ———— for the protection of his employees not otherwise protected.

"(b) Public liability and property damage insurance. The contractor shall take out and maintain during the life of this contract such public liability and property damage insurance as shall protect him and any subcontractor performing work covered by this contract, from claims for damages for personal injury, including wrongful death, as well as from claims for property damages,

which may arise from operations under this contract, whether such operations be by himself or by any subcontractor or anyone directly or indirectly employed by either of them. The amounts of such insurance shall be as follows:

"Public liability insurance in an amount not less than $5,000 for injuries, including wrongful death, to any one person, and, subject to the same limit for each person, in an amount not less than $10,000 on account of one accident, and property damage insurance in an amount not less than $1,000."

Thereafter, and on December 31, 1936, plaintiff at the request of the H. W. Underhill Construction Company issued and delivered to the company a joint policy of insurance covering workmen's compensation, public liability and property damage, effective for one year from that date. On or about June 24, 1937, the H. W. Underhill Construction Company completed the Parsons stadium contract and during the period of the construction of the stadium, in accordance with the terms of the contract, premiums on the joint insurance policy accrued, and remained unpaid in the sum of $923.13. The present action is to recover this unpaid premium.

The sole question is whether the defendant surety company is obligated to pay the premiums on the policies issued by plaintiff to the construction company. It is plaintiff's contention that the bond together with the contract and the documents made a part thereof must be construed together; that since the contract required the contractor to take out and maintain insurance and required the contractor, before final settlement, to submit satisfactory evidence that all indebtedness connected with the carrying out of the contract had been paid, and required the contractor to give a bond covering the faithful performance of said contract and guaranteeing the payment of all obligations arising thereunder, which bond was duly executed, the bond so given guarantees the payment of the insurance premiums and the defendant surety company is liable therefor. Plaintiff points to the language of the contract, which reads: "The contractor shall take out and maintain during the life of this contract" the type of insurance and the amounts therein designated. It is pointed out the word "maintain" has been defined as meaning "to bear the expense of." 38 C. J. 335. Hence, it is urged that when the contractor herein agreed "to take out and maintain" insurance there was created an obligation on its part to pay for it, which obligation the defendant guaranteed.

Plaintiff directs attention to article 5 of the contract, which provides that before the issuance of final certificate the contractor shall

submit evidence satisfactory to the architect that all pay rolls, material bills, "and other indebtedness" connected with the work have been paid. It is contended that this provision is broad enough to include insurance premiums.

While no Kansas case is cited where the provisions of a faithful performance bond has been extended to cover insurance premiums, plaintiff relies on the principles announced in cases involving performance bonds. Thus in *Topeka Steam Boiler Works Co. v. United States F. & G. Co.*, 136 Kan. 317, 15 P. 2d 416, one Stauffer sublet part of the work to Connor, who gave Stauffer a bond conditioned upon the faithful performance of his contract. The plaintiff furnished certain material and labor under and by virtue of Connor's subcontract, for which no liens were filed. The action was against the surety on Connor's performance bond. The contract provided that Connor "shall furnish all labor and material, equipment, fixtures" necessary to construct, etc. The court said:

"We recognize that the primary meaning of the word 'furnish' is to provide or supply that which is necessary. (Webster's New International Dictionary.) It does not necessarily imply ownership of the thing furnished, but may include authority to use it for the needed purpose, and when one contracts simply to furnish what is necessary, and does so, ordinarily there is no liability on the bond given to secure the faithful performance of the contract. (*Road Supply and Metal Co. v. Bechtelheimer*, 119 Kan. 560, 240 Pac. 845.) But in contracts for the construction of buildings where the contractor agrees to furnish the material and labor necessary to complete the building, which material and labor necessarily enter into and become a part of the completed structure, and where the price to be paid the contractor is deemed sufficient to enable him to pay for the material and labor, the word takes on a more definite implication that he shall pay for it. Other provisions of the contract may be looked to, to determine whether under the contract as a whole he agreed to pay for the material as well as to furnish it. The bond in this case releases the surety only when the principal has performed his contract 'in accordance with the true spirit and intent of said contract.' What is the true spirit and intent of the contract made between Connor and Stauffer with respect to Connor paying for material and labor as well as simply to provide it? We think there can be but one answer to that question, and that is that Connor obligated himself to pay for the material and labor. . . . More than that, a paragraph of the 'general conditions of the specifications,' conceded by the parties to be incorporated in the Connor-Stauffer contract by reference, provides specifically 'the contractor shall pay in full, all persons who perform labor,' and ninety percent of the cost of all material at the time of each estimate and at the time of final settlement shall furnish evidence that all persons who have performed labor or furnished material under the contract have been fully paid." (pp. 321, 322.)

Plaintiff also directs our attention to *Cooke v. Luscombe*, 132 Kan. 147, 294 Pac. 849, where a similar question was involved and the same conclusion was reached.

In the case before us the obligation of the defendant surety company must be measured by the bond construed with the contract and documents made a part thereof. Nowhere in the contract is there any express promise to pay insurance premiums. Neither in the contract nor in the carefully formulated regulations of Federal Emergency Administration of Public Works is direct reference made to the payment of insurance premiums. Looking to the face of the bond, the contract and documents attached, we find no express statement extending the protection of the bond to the plaintiff insurance company. Neither do we find any provision that by reasonable inference would include the premiums on the policies issued by the plaintiff to the construction company. The documents on their face show expert draftsmanship. The subject of insurance was specified with care—the various types of insurance were set out in many paragraphs. If it was the intention of the parties to include the insurance premiums, a few words would have accomplished that end. The parties had the right to make any lawful contract they might desire. We have no authority to add to or take from the contract as written. To expand the contract by construction to include items not within the fair and reasonable meaning of the language used is to write a new contract. Looking at the contract in its entirety, in the light of the circumstances under which it was entered into, we are unable to find any provision that would cover insurance premiums.

While the question seems to be a new one in this state, it has frequently been before the courts in other jurisdictions.

In *Employers Mut. L. Ins. Co. v. Ferd. H. Grahl C. Co.*, 203 Wis. 315, 234 N. W. 326, the action was upon a performance bond for unpaid insurance premiums. The court said:

"The only question on this appeal is whether the surety company is liable to plaintiff for the unpaid premiums. . . . There is no provision in the statutes or in the bond which the surety company furnished that expressly requires the surety to pay premiums for compensation insurance procured by the construction company. True, the construction company's contract requires it to pay all liabilities for injuries incurred under the compensation act, and the surety's bond renders it responsible for the construction company's payment of its liabilities for such injuries, but neither contract nor bond subjects the surety to liability for premiums on compensation insurance.

"Plaintiff also contends that since the statute requires the employer to carry

such insurance, liability for the premiums is one of the liabilities which attaches to him under the compensation law, just as much so as liability to pay compensation for an injury. Manifestly, plaintiff's demand for unpaid premiums is not a 'liability for injuries which have been incurred in the said construction.' The plaintiff has no demand for compensation resulting from injuries arising under the said construction. Its demand is solely for a premium agreed to be paid by the construction company to obtain a policy to protect it from liabilities for injuries. Although it is true that the construction company was required by the law to carry compensation insurance, and if it did not do so the owner would be liable for compensation for injuries, those requirements do not subject the surety in this case to liability for the insurance premiums. The liability of the surety rests upon the terms of its bond. It was bound by its bond to see to it that the contractor paid and discharged all liabilities for injuries incurred under the compensation act, but it did not bind itself to see to it that the contractor paid premiums for compensation insurance." (pp. 317, 318.)

In *Southern Surety Co. v. State, ex rel.*, 90 Ind. App. 309, 165 N. E. 444, the action was to recover for insurance premiums on two faithful-performance bonds. The condition of the bonds was for the faithful performance of the contracts and that the principal "shall pay all debts contracted by said principal in the prosecution of said work, including labor and material furnished." The amount of the premium on the policies was based on the amount of the pay roll. The court said:

"Whether appellee is entitled to recover from appellant on the bonds sued on depends upon the question of whether it can be said that the fractional part of the premium on said policy contracts, the amount of which is determined by using as a basis a pay roll of the workmen on the Rich and Kreiger roads, constitutes a debt contracted by the Baker company in the prosecution of the work. . . .

"Appellee contends that the indebtedness for protection afforded by the workmen's compensation and employers' liability insurance policy was incurred in the prosecution of the work and that such indebtedness sustained an intimate, immediate and exclusive relation to it.

"We do not agree with appellee's contention to the effect that appellant's principal, the contractor, not having exempted itself from the operation of the compensation act, was therefore required to carry employers' liability insurance, the premium for which was chargeable against appellant under the terms of its bond. . . . It cannot be said that the expense incurred by way of the premium for the employers' liability policy was necessarily incurred in the prosecution of the work. . . ." (pp. 312, 313.)

In the case at bar the surety, by its bond, was obligated to see to it that the contractor observed all the terms and conditions of the contract "for the construction or making of the above-described im-

provement." By its contract the contractor agreed that all pay rolls, material bills and other indebtedness "connected with work" would be paid. We do not think it was bound to pay the premiums on the insurance policies issued by the plaintiff.

The judgment is affirmed.

HARVEY, J., concurs in the result.