The UNITED STATES of America for the Use and Benefit of POOL CONSTRUCTION COMPANY, a partnership composed of Vernon L. Pool and Jesse T. Pool, Plaintiff,

v.

SMITH ROAD CONSTRUCTION CO., Inc., a corporation, Woods Construction Co., Inc., a corporation, and American Casualty Company, a corporation, Defendants.

Civ. No. 5286.

United States District Court
N. D. Oklahoma.
March 10, 1964.

Wheeler and Wheeler, Tulsa, Okl., for plaintiff.

Houston, Klein & Davidson, Tulsa, Okl., for defendants.

DAUGHERTY, District Judge.

Upon considering all of the evidence presented, arguments and briefs submitted by both sides, the Court makes the following Findings of Fact, Conclusions of Law and Decision herein:

### FINDINGS OF FACT

1. Defendant Woods Construction Company was the general contractor on the relocation of State Highway 28 (Project 60-1610). Defendant Smith Road Construction Company was a subcontractor on the project. Defendant American Casualty Company executed the payment bond for the project.

2. Plaintiff Pool Construction Company had rights from the owner permitting it to remove rock material from a quarry.

3. Pool and Smith Road effected an arrangement whereby Smith Road could remove rock material from said quarry, process the same through its crusher and pay Pool .13 per ton therefor. Under this arrangement Pool furnished rock material to Smith Road at said price which went into the Highway 28 project.

4. Originally by stipulation of the parties the value of the rock material which went into the Highway 28 project from the quarry at .13 per ton was $8,-363.03, and $3,500.50 of said amount had been paid with the balance in dispute. This stipulation was discarded by the Court and parties when additional evidence was offered pursuant to directions from the Court of Appeals and evidence was called for on tonnage of rock going into the project from the quarry and amounts paid and due therefor, if any.

5. From the evidence, the Court finds that 75,145 tons of rock went into the Highway 28 project from the quarry. Some rock going into said project came from another source for convenience and a shorter haul but this rock was covered by supplying a like amount to this other source from the quarry involved herein. Said figure of 75,145 tons is based on U. S. Corps of Engineers cubic yardage estimates as to the rock going into the project and the application of proper conversion factors to arrive at the tonnage. Under the type of operation involved here, and the evidence produceable therefrom, it is not possible to be absolutely sure as to the exact tonnage involved. However, the 75,145 ton figure is believed to be reliable and generally accurate, comes from a neutral but informed source, and is accepted by the Court.

6. The Court finds from the evidence that the total amount of rock material taken from the plaintiff's quarry by Smith Road and going to any and all projects served by the quarry during the time involved herein and after applying proper conversion factors to arrive at ton-

nages from cubic yardage, had a value of $20,302.21 at .13 per ton. The Court further finds from the evidence that all purchasers of rock material from the quarry except Smith Road have paid for their rock; that plaintiff has received from all sources for his rock material the sum of $14,019.72, leaving a balance due plaintiff from Smith Road for rock material taken from the quarry by Smith Road and going into the Highway 28 project in the amount of $6,282.69.

7. Originally this project was undertaken by a contractor named J. C. Johnson, who defaulted. The surety of Johnson tendered Woods Construction Company to finish the work. Woods was accepted. Woods entered into an agreement with Smith Road for Smith Road to do *all* of the work to be done. This came to the attention of the Corps of Engineers and they objected because a prime contractor must retain (and not sub out) at least fifty percent of the work. Woods apparently then satisfied the Corps of Engineers that it would do at least fifty percent of the work. Woods made the president of Smith Road its superintendent for the job. However, the facts disclose that Smith Road did all the work and Woods had no equipment of any kind on the project or any personnel except perhaps the president of Smith Road as its superintendent who was really there for the Company of which he was president and which was doing all the work. Some of Smith Road's quarry employees were certified to the Corps of Engineers on Woods' payrolls, but again these employees were actually employed by and worked for Smith Road and not Woods. As such subcontractor under Woods, Smith Road was obligated to build the highway and to furnish the rock aggregate therefor. (See record for testimony of I. W. Woods, pages 50 & 51, and William R. Smith, pages 78 & 79, to this effect.) There is no evidence that Woods bought rock from Smith Road for the job or paid Smith Road for rock for the job on a separate basis independent of the subcontractor arrangement and compensa-

tion. Pool furnished the rock material to Smith Road who received same as a subcontractor and not as a materialman as far as the Highway 28 project was concerned.

8. On February 20, 1961, Pool notified Woods by letter that "at this time they (Smith Road) are behind on their payments several months and owe me several thousand dollars for the material placed on your project." Rock material was furnished by Pool to Smith Road within the period of 90 days prior to this letter of February 20, 1961 which went on the Highway 28 project. (See testimony of Vernon Pool given on April 10, 1962 at pages 16 & 17 and testimony of Vernon Pool and Bill R. Anthony given on March 3, 1964.) A very small amount of additional rock material was furnished by Pool to Smith Road after the February 20, 1961 letter and before May 27, 1961, when the last material from the quarry went on the Highway 28 project. By this letter, Woods, as prime contractor, and his surety, had notice that Pool as a supplier to Smith Road, a subcontractor under Woods on the project involved herein, was furnishing material to the project, had not received payment from the subcontractor with whom he had contracted for same, and was looking to the prime contractor and his surety for payment of the amount then due and future amounts to become due. With this notice, Woods could have withheld payment and final settlement with Smith Road and otherwise protected itself as contemplated by the act and the intent of Congress. Suit was filed herein on October 30, 1961.

9. Smith Road issued a check dated 5–3–61 in the amount of $2,239.98 payable to Pool which contained a notation that it was in full payment of "Royalty through 4–28–61 not including chips." No statement of account accompanied this check. Pool applied this check to the credit of a purchaser of rock from the quarry named Noland Smith, he being the one who supplied the money to Smith Road which was represented by said check and such fact was known by Pool.

This procedure was in keeping with an understanding between these parties whereby Noland Smith would get rock from the quarry, pay Smith Road for same, notify Pool of the payment and Smith Road was to remit payment therefrom to Pool for his share. Noland Smith paid Smith Road $2,500.00 for rock from the quarry a few days before 5-3-61 and notified Pool of such payment when it was made. Pool was justified in crediting the 5-3-61 payment to the Noland Smith account under said arrangement and was justified in considering the notation on the check as pertaining to the Noland Smith account and not to the Smith Road account.

10. There was no agreement or mutual intent or meeting of the minds between Pool and Smith Road that the said check dated 5-3-61 in the amount of $2,239.98 from Smith Road to Pool was to be an account stated between them as to the amount Smith Road owed Pool for all rock taken from the quarry. Moreover, said check was a payment and was cashed and paid.

11. Pool and Smith Road had no agreement or mutual intent at any time to enter into an accord and satisfaction with reference to the amount owing Pool by Smith Road for rock taken from the quarry, or going into the Highway 28 project. The rock tonnage involved was not in dispute as plaintiff at all times was endeavoring to get the weight tickets from Smith Road so as to be able to develop from same the exact tonnage moved from the quarry. Smith Road has never presented these weight tickets.

## CONCLUSIONS OF LAW

1. The Miller Act is to be liberally construed to effectuate the purpose of the act as declared by Congress and where materials are actually furnished for a project covered by a payment bond recovery should be allowed if notice is given and suit brought within the prescribed period. Illinois Surety Co. v. John Davis Co., 244 U.S. 376, 37 S.Ct. 614, 61 L.Ed. 1206; St. Paul Mercury Indemnity Co. v. United States for Use of H. C. Jones Const. Co., (C.A.10 Cir.), 238 F.2d 917.

2. Pool was a materialman within the meaning of Title 40, U.S.Code § 270b, inasmuch as it had the right to remove and use rock material from the quarry and under its arrangement with Smith Road it supplied and furnished such rock material to Smith Road for use on the Highway 28 project at .13 per ton, and this is so even though Smith Road processed the rock by crushing and moving same to the project. Pool furnished rock material to Smith Road in non-crushed or natural form and the price was fixed accordingly. The fact that Smith Road processed this rock material and hauled same to its final destination in the highway will not prevent Pool from being a furnisher of said rock material to Smith Road at the agreed price. United States Fidelity & Guaranty Co. v. United States for Benefit of Bartlett, 231 U.S. 237, 34 S.Ct. 88, 53 L.Ed. 200; United States to use of Norfolk Southern Railroad Co. v. D. L. Taylor Co., D.C., 268 F. 635, affirmed 277 F. 945; Lumbermans Mutual Casualty Co. v. H. W. Underhill Construction Co., et al., 149 Kan. 684, 88 P.2d 1107.

3. A subcontractor is such and not a materialman even though he may furnish materials going into his work. United States for Use and Benefit of Whitmore Oxygen Co. v. Idaho Crane and Rigging Co., D.C., 193 F.Supp. 802; Basich Bros. Const. Co. v. United States for Use of Turner, 9 Cir., 159 F.2d 182.

4. The notice from Pool (supplier of rock material) to Woods (general contractor) that Smith Road (subcontractor) was delinquent in paying Pool for rock used on the Highway 28 project and owed Pool several thousand dollars for same, was sufficient under the Miller Act notwithstanding the omission from the notice of the exact dollars and cents due. United States for Use and Benefit of Hopper Bros. Quarries, a partnership v. Peerless Casualty Co., 8 Cir., 255 F.2d 137; McWaters & Bartlett v.

United States, et al., (C.A.10 Cir.) 272 F.2d 291.

**5.** The notice from Pool (supplier of rock material) to Woods (general contractor) by letter on February 20, 1961, was timely with reference to the required 90-day period, since Pool had furnished rock material for the Highway 28 project to Smith Road within the period of 90 days prior to said notice and said notice was also timely as to any rock material thereafter supplied by Pool to Smith Road, inasmuch as said notice alerted Woods to the fact that its subcontractor was delinquent and that Pool was looking to it for payment and said notice afforded Woods the ability to thereafter protect itself in making payments to and settling up with Smith Road, its subcontractor. Bowden v. United States for Use of Malloy, 9 Cir., 239 F.2d 572, certiorari denied 353 U.S. 957, 77 S.Ct. 864, 1 L.Ed.2d 909.

**6.** To have an accord and satisfaction (whereby a creditor accepts less than due him on an obligation) which is enforced by law, there must be a contract or agreement between the creditor and debtor (here Pool and Smith Road), express or implied, to that effect, and such a contract or agreement occurs only where the parties intend it, mutually assent to it and there is a meeting of the minds on it with all material facts known to both parties. Saulsbury Oil Co. v. Phillips Petroleum Co., (C.A.10 Cir.), 142 F.2d 27.

**7.** An account stated is defined broadly as an agreement between the parties to an account based upon prior transactions between them, with respect to the correctness of the separate items composing the account, and the balance, if any, in favor of the one or the other. 1 Am.Jur. p. 272; 84 A.L.R. 114. A distinction exists between an account stated and a settled account in that an account stated properly exists only where accounts have been examined and the balance admitted as the true balance between the parties, without having been paid. When the balance thus admitted is paid, the account is deemed a settled account. 1 Am.Jur. pp. 272, 273. The basis of an account stated is a promise to pay money. 1 Am.Jur. p. 284. An account stated presupposes an absolute acknowledgment or admission between the parties of a certain sum due. 1 Am.Jur. p. 277. The defendant's position that the notation on the check was an account stated between the parties cannot be sustained under the foregoing rules of law since there was no mutual agreement or intent for it to have that effect and furthermore since the check was payment no account stated existed between the parties by virtue of same.

### DECISION

Based on the foregoing findings of fact and conclusions of law, plaintiff should recover judgment against the defendants for the sum of $6,282.69, the unpaid value of rock material furnished by plaintiff to the State Highway 28 project, together with interest thereon from May 27, 1961, until paid. Counsel for plaintiff will prepare a judgment in accordance with the foregoing for the signature of the Court and entry herein.