The Watson Coal & Mining Co. v. James et al.

THE WATSON COAL & MINING CO. v. JAMES ET AL.

1. **Contract:** CONSTRUCTION: PLACE OF PERFORMANCE. A contract whereby defendants agreed "to furnish on the cars, at the coal mine at Ford, Iowa,    *    *    *    coal by the car load, at $1.50 per ton, as weighed at the I. D. Company's works at Des Moines," *held* to be an agreement to *deliver* the coal at Ford, (BECK, J., not concurring,) and that therefore an action for a breach of the contract was properly brought in the county in which Ford is situated.

2. **Practice on Appeal:** ERROR WITHOUT PREJUDICE. Sustaining a demurrer to one count of an answer is not prejudicial error, where the same facts are pleaded in substance, but in different language, in another count, and the issues raised by such count are presented to the jury by proper instructions.

3. **Evidence:** EXCLUSION: MATERIALITY NOT SHOWN. It is not error to exclude evidence which, standing alone, is immaterial, when no foundation has been laid for it, and counsel does not claim that any foundation will be laid.

4. ———: REPETITION ON REBUTTAL. Where a witness has testified fully upon a matter in chief, it is not error to exclude further testimony by him on the same matters in rebuttal.

5. **Settlement:** WHAT INCLUDED: PRESUMPTION. A settlement is presumed to include all matters of difference between the parties, the facts whereof are known to them at the time, but is not a bar to an action on a claim not intended to be included.

6. **Corporations:** FALSE REPRESENTATIONS OF OFFICER: KNOWLEDGE. Where representations made by the president of a corporation, on its behalf, were false, but he was ignorant of their untruthfulness, it will be presumed, in the absence of evidence to the contrary, that the corporation was also ignorant of their untruthfulness, and it will not be liable therefor.

7. **Contract:** TO DELIVER COAL: CONSTRUCTION: "DAILY DEMAND." A contract, whereby defendants agreed to deliver coal from a certain mine to plaintiff, stipulated that "the daily demand for coal by said company shall at no time exceed one-half of the daily output of said mine." *Held* that it was not necessary for plaintiff, in order to recover for a failure to deliver the coal, to show that it made a daily demand for one-half the daily output of the mine, but that a general demand was sufficient.

*Appeal from Warren Circuit Court.*

SATURDAY, JUNE 25.

ACTION AT LAW. The petition is in two counts,—the first

upon a written contract, and the other upon a settlement of claims under the contract. There was a judgment upon a verdict for plaintiff. Defendants appeal.

*Stone, Ayres & Curtis*, for appellant.

*Parsons & Perry*, for appellees.

BECK, J.—I. It becomes necessary, for a proper understanding of the grounds upon which we base our decision of the case, to set out in full the petition, and an exhibit referred to therein. They are in the following language, found in the abstract:

### " PETITION.

" (1) That plaintiff is a corporation, and that on the 22d day of October, 1883, the defendant J. T. James, in the county of Warren, executed to the plaintiff his contract in writing, by which he agreed to pay the plaintiff the sum of $2,500 in coal, at $1.50 a ton, to be delivered at Ford, in said county, according to the terms and conditions of said contract, a copy of which is hereto attached, marked ' A,' and made a part thereof; that from time to time, after the making of said contract, the plaintiff demanded said coal of the defendant at the place and according to the terms of said contract, and in all respects performed all the conditions thereof on its part; that the defendant delivered coal to the amount of $467.76, on said contract, and refused to deliver any more coal on said contract.

" (2) That on the 22d day of October, 1883, the defendant delivered to the plaintiff his contract, a copy of which is hereto attached, marked ' A,' and made a part hereof; that said contract was, by its terms, to be performed in Warren county, Iowa, and that defendant failed to keep said contract, so that on the 14th of October, 1884, there remained due and payable thereon the sum of $2,032.34, so that on said 14th day of October said parties accounted together of the amount that had been paid on said contract, and agreed

upon the amount remaining due on said contract, in money, at $2,032.34; $1,000 thereof was then paid, which was applied thereon; and it was further agreed, as a part of said settlement, that said defendant should deliver to the plaintiff, in satisfaction of the amount still due upon said bond, certain good notes, then and there agreed upon; that the defendant failed and now refuses to deliver said notes; that there now is due and payable upon said contract, in money, the full sum of $1,032.34, and interest thereon at six per cent from October 14, 1884; for which sum, with interest, the plaintiff demands judgment."

Exhibit A.

"Des Moines, Iowa, October 22, 1883.

"For and in consideration of property this day purchased from the Watson Coal & Mining Company, I hereby agree to furnish on the cars, at the coal mine at Ford, Iowa, on demand, commencing as soon as the coal works can supply the same, good merchantable screened coal by the car-load, at $1.50 per ton, as weighed at the International Distilling Company's works in Des Moines, Iowa, to the amount of $2,500, at the above-named price per ton. But the daily demand for coal by said company shall at no time exceed one-half of the daily output of said mine. And it is agreed that, in the event of an increase of price of mining above four cents per bushel at any time during the term of this agreement, I am to have the privilege of paying the amount demanded in cash instead of coal, at the price mentioned above.                                        J. T. James."

II.   Before answer defendant James filed an affidavit, showing that he was, and had been for a long time, a resident of the county of Marion, distant thirty miles from the place where the court is held, and the expenses he has incurred by attending the court, and based a motion thereon for the change of the venue of the case to the proper county. The motion was overruled, and

1. CONTRACT: construction: place of performance.

proper exceptions were taken to the ruling, of which defendants now complain. The other members of the court think that the ruling is correct, for the reason that the contract upon which suit is brought, by its terms, is to be performed at Ford. They think that the agreement of the defendant to "furnish on the cars" at Ford the coal is, in effect, an agreement to *deliver* the coal there to plaintiff. I cannot concur in this view, but am of the opinion that the coal, under the contract, was to be delivered at Des Moines, where it was to be weighed, and thereby fully identified and set apart as plaintiff's property. Until it was thus identified and set apart, the property in it did not pass to plaintiff. The property passed only upon delivery. As no property passed, there was no delivery. The requirement of the contract, that defendant was to "furnish" the coal on the cars at Ford, in my opinion simply designates the mine from which the coal is to be taken.

III. It becomes necessary to refer to the other pleadings of the parties. The defendant James, in his answer, denies the allegations of the petition as to the demand of coal and the settlement. He, in substance, alleges that the contract sued on was executed in payment for certain coal lands, or an interest therein, and for machinery, etc., sold by plaintiff to defendants; that plaintiff, through its officers or agents, falsely represented the character of the mine, the quantity of coal therein, and other matters pertaining to the value of the property; and that the consideration of the contract sued on has therefore failed. In another count of his answer (the third) he joins with O. B. Ayers and O. P. Wright and E. Baker, who had before been made defendants in the action, in allegations to the effect that these parties and defendant James were associated in the purchase of the property, and that the consideration of the purchase failed, by reason of false representations of plaintiff's officers or agents as to the character of the property, quantity of coal, etc. All these defendants join in asking

judgment for the amount of the damages they have sustained by reason of these false representations.   In the fourth count of the answer, like allegations as to the false representations of plaintiff's officers or agents are repeated, and defendants claim damages against plaintiff therefor.   These separate pleadings, claiming to recover against plaintiff, are in different language, though of like effect.   They need not be more particularly stated, in the view we take of the case.

IV.   Plaintiff demurred to the fourth count of the answer on the ground that it does not show a cause of action; that by the matters alleged therein defendants seek to contra- dict and vary the terms of the written instrument, an assignment of a lease by which an interest in the land was conveyed to defendant James; and on other grounds which need not be stated.   The demurrer was sus- tained, and of this ruling defendants complain.   In our opinion, we need not inquire into the correctness of this ruling, for the reason that it was without prejudice to defendants, if erroneous.   As we have shown, the fourth count of the answer is, in substance, the same as the third count.   The court, in instructions, correctly directed the jury upon the question of plaintiff's liability to defendants upon the allegations of the third count, which, as we have just said, were in substance the same as those of the fourth count.   Therefore defendants' claim for damages against plaintiff was submitted to the jury, and it is not improbable that the jury in their verdict allowed such damages.   Certain it is that they could have done so. This is none the less true on the ground that the verdict is against defendant James alone.   If such damages were allowed, defendants Ayers, Wright and Baker will, as between them- selves and James, have the benefit thereof as well as James.   So, if they were not allowed, all these parties to the cause will, as between themselves, be bound by the judgment.   As no prej- udice against the defendants can be discovered by the ruling on the demurrer, the judgment cannot be disturbed, even should it be regarded as erroneous.

*2. PRACTICE on appeal: error without prejudice.*

V. Defendants complain that the court erred in admitting in evidence a certain pamphlet descriptive of the land. It is sufficient to say, upon this point, that plaintiff's amended abstract, which is not denied, shows that this pamphlet was not admitted in evidence.

VI. The defendants insist that the court erred in denying defendants the right to recover special damages accruing by reason of expenses incurred by them in pumping the water out of the mine, and in running entries and the like. The third count sets up these matters as a ground of recovery. There was no demurrer to this count. The only ruling which is claimed to be adverse to defendants' right to recover the special damages, as they are called, was the exclusion of evidence intended to be elicited by a question to one of the witnesses, requiring him to state the price for "driving entries." It was objected to on the ground that "no foundation had been laid for the question." We think the court, upon this ground, rightly sustained the objection to the question. The "price of driving entries" would not, without other evidence, tend to establish defendants' claim for special damages, and it is not shown that defendants, when the ruling was made, claimed that other evidence upon the question would be offered. There were general objections to the question upon the ground of incompetency and immateriality. We will presume the court sustained it upon the specific objection, which appears to us to have been well taken.

*3. EVIDENCE: exclusion: materiality not shown.*

VII. A witness was asked to state conversations and negotiations had by the defendants with plaintiff's president, in relation to the purchase of land of another to be used with the property purchased by plaintiff. An objection to the question, made by defendants, was overruled. The amended abstract, which is not denied, shows that the evidence, so far is it related to the property of the other persons, was sustained.

VIII. Certain questions were asked a witness, introduced

in rebuttal by defendants, as to the statements of the president of the plaintiff, made in the negotiation resulting in the purchase by James of the plaintiff's interest in the coal mine and lands. Objections to the questions by plaintiff were sustained, on the ground that the witness had testified fully upon these matters when he was before on the stand. The amended abstract shows the fact upon which these objections are based. They were therefore rightly sustained.

*4. ——: repetition on rebuttal.*

IX.   The court directed the jury, in effect, that, if they found the settlement alleged in the second count of the petition, they were to presume that all matters of difference were included therein, the facts whereof were known to defendants. But, if defendants' counter-claim was not intended to be settled, the settlement would be no bar to recovery thereon. These rules were presented in three consecutive instructions, which, of course, were to be read together, They are clearly correct. Defendants' counsel think the jury did not understand the rules they announce. We think otherwise.

*5. SETTLEMENT: what included: presumption.*

X.   An instruction given to the jury directed them that, unless the president of the defendant knew the representations relied upon by defendants were false, they cannot recover. It is shown, without dispute, that the contract with defendants, and the representations, were made by the president acting for the plaintiff. It is not denied that, if the plaintiff had no knowledge of the untruthfulness of the representations, it would not be liable to defendants, and we think the court below was right in holding that, if the principal officer of the plaintiff, (its president,) who transacted all the business with defendant, was ignorant of the untruthfulness of the representations, the law, in the absence of proof to the contrary, will presume that the plaintiff was ignorant thereof.

*6. CORPORATIONS: false representations of officer: knowledge.*

XI.   Certain instructions asked by defendants were refused.

Among other things, they hold that plaintiff, to recover, is required to show that it made a *daily demand*

**7. CONTRACT: to deliver coal: construction: daily demand.** upon defendant for one-half of the daily "output" of the mine. We think the contract cannot be so construed. The term "demand" is used in the contract to indicate that the coal shall be delivered when required by plaintiff, and that no more than half of the daily product—"output"—of the mine can be required by plaintiff. The "demand" required by the contract need not be made daily, as the coal is mined, but may be made for the future. The "demand" could only extend to one-half the daily "output." If the coal were exhausted, so there could for any other reason be no "output," defendants would not be liable. Counsel's position to the contrary is clearly wrong.

The foregoing discussion disposes of all questions in the cause.

The judgment of the circuit court is

AFFIRMED.