WM. H. BURNS *et al. vs.* GEORGE SEWELL *et al.*

Argued Jan. 19, 1892. Decided Feb. 15, 1892.

Constitution—Passage and Approval of Laws.—Under the last clause in section eleven, (11,) article four, (4,) of the constitution, authorizing the governor to sign certain bills within three days after the adjournment of the legislature, bills, though finally voted upon more than three days before the day of adjournment, if enrolled within the last three days, are to be deemed passed within that time, and may be signed by the governor.

Lien—Material Sold for, but not Used in, Building.—Under Laws 1889, ch. 200, one who sells and delivers to a contractor material to be used in the erection of a building, actually constructed or in process of construction, is entitled to a lien, though the material be not in fact used in the building.

Appeal by plaintiffs, William H. Burns and Willis R. Shaw, from an order of the district court of Ramsey county, *Kelly*, J., made September 19, 1891, refusing a new trial.

The defendant Thomas Tyrer was the owner of a lot in West St. Paul, and on April 21, 1890, made a contract with defendant Charles B. Lawton regarding it, whereby Lawton agreed to construct a dwelling house thereon. Lawton made a contract May 1, 1890, with the

defendant George Sewell, to furnish the lumber and material and do the carpenter work. Sewell purchased the lumber from plaintiffs, and ordered it from time to time between May 9 and July 29, 1890. Plaintiffs delivered it on the lot as it was needed in the construction of the house. All of it was ordered and delivered prior to July 9th, except two items, viz., 600 feet siding at $15 per M., and 2 pieces third clear at $41 per M., $10.65. These items were ordered by Sewell and delivered on the lot by plaintiffs on July 29, 1890; but Sewell took them elsewhere, and they were not used in the construction of the house. The lien statement was for $387.29, and was filed on October 25, 1890.

This action was commenced December 13, 1890, and was tried in September, 1891. Findings were filed directing judgment that plaintiffs were not entitled to a lien upon the house or lot, for the reason that the lien statement was not filed within 90 days from the time when the last of the materials which actually entered into the construction of the house were furnished. The contention that the lien law was not constitutionally enacted was overruled.

*J. M. Hawthorne,* for appellants.

The wording of Laws 1889, ch. 200, is: Whoever furnishes material for the erection of any house by virtue of a contract with the owner shall have a lien. The word "furnished" simply means sold and delivered for the erection of a building. It does not mean, as our opponent contends, sold, delivered for, and actually used, in the erection of a building. In *Johnson* v. *Gold,* 32 Minn. 535, this court says: "We agree with the learned judge below that the doors preserved their identity, notwithstanding the change of glass, and that they must therefore be taken to have been furnished when originally delivered." In *Milner* v. *Norris,* 13 Minn. 455, (Gil. 424,) the syllabus says the party furnishing material for a building is entitled to a lien for all he has furnished up to the time of filing the account, even though some of it may not be actually put into the building at that time.

In the following cases it is held that a lien may be enforced for material not used in a building, if it has been furnished for it, and that it is furnished when the material man sells it for the erection

of a building, and delivers it thereat: *Neilson* v. *Iowa East. R. Co.*, 51 Iowa, 714; *Watson Coal & Mining Co.* v. *James*, 72 Iowa, 184; *Greenway* v. *Turner*, 4 Md. 296; *Watts* v. *Whittington*, 48 Md. 354; *Morris Co. Bank* v. *Rockaway Mfg. Co.*, 14 N. J. Eq. 189; *Marrener* v. *Paxton*, 17 Neb. 634; *Stewart-Chute Lumber Co.* v. *Missouri Pac. Ry. Co.*, 28 Neb. 39; *Oppenheimer* v. *Morrell*, 118 Pa. St. 189; *White* v. *Miller*, 18 Pa. St. 52; *Daniel* v. *Weaver*, 5 Lea, 392; *Chicago Art. Well Co.* v. *Corey*, 60 Ill. 73; *Thielman* v. *Carr*, 75 Ill. 385.

The material is sold and delivered with the expectation that the contractor will use it in the erection of the building, and the seller is under no obligation to watch and see that the material is actually used. When he delivers it, his duty ends. The duty of somebody else then commences. The contractor or subcontractor is the agent of the owner. If he acts dishonestly, innocent third parties should not suffer. But, between two innocent parties, he who employed a dishonest man should bear the loss, rather than an innocent material man.

Chapter 200 of Laws of 1889 was never enacted, and never became a law. Hence 1878 G. S. ch. 90, is still in force, and, if in force, the lien was filed within six months from furnishing of last material. The facts connected with its attempted passage are as follows: The bill originated in the house, and was known as "House File No. 783." It passed the house April 9, 1889. House Jour. 957. It was amended and passed the senate April 18, 1889. Senate Jour. 830, 831. The senate amendments were concurred in, and the bill as amended finally passed the house on Friday, April 19, 1889. House Jour. 1156. The committee on enrolled bills reported to the house on Monday, April 22, 1889, that they had examined house file No. 783, and that it had been correctly enrolled. House Jour. 1203. It then went to the governor. The legislature adjourned on Tuesday, April 23, 1889. House Jour. 1264. On Wednesday, April 24, 1889, it was approved by the governor.

*Louis M. Hastings*, for respondents.

In the agreed statement of facts, Sewell was building a house, and, stating that fact to the plaintiffs, ordered lumber therefor from them.

He made no contract for a specified amount, but ordered lumber from time to time as he needed it. The last item ordered for, and used in, the house was furnished July 9, 1890. After the completion of this house he began building another on the adjoining lot for another person, and on July 29, 1890, ordered the last two items of plaintiffs' bill. They were intended for, and used in, the second house, but nothing was said as to their use, nor were any questions asked by plaintiffs. As to the purpose for which these two items were ordered, the minds of the parties never met. Sewell intended no fraud; he simply ordered the lumber, and, as the second house adjoined the first, delivery in the neighborhood of either would be practically the same thing. Can it then be said that these last two items were furnished for the erection of the first house by virtue of a contract with, or at the instance of, the owner or his agent, the builder? There was no contract or statement or intimation that these last items were to be used in the first house; and if the appellants chose to assume it, without inquiry, they did it at their own risk.

The decisions of this court have not thus far gone to the extent of giving a lien merely for the furnishing of material, irrespective of its use in the building, though, in cases where the owner prevented completion of a contractor's bargain, his wrongful act could not defeat the lien. *Howes* v. *Reliance Wire-Works Co.*, 46 Minn. 44; *Milner* v. *Norris*, 13 Minn. 455, (Gil. 424;) *Hickey* v. *Collom*, 47 Minn. 565; *Chicago Art. Well Co.* v. *Corey*, 60 Ill. 73.

The second point raised by appellants is that Laws 1889, ch. 200, never became a law. A bill cannot be said to be finally passed until it is enrolled. Referring to bills passed during the "last three days of the session," do not these words mean "the last three days on which bills can be passed," thus excluding the day of adjournment, for no bills can be passed on that day? If either of these suggestions is correct, the legality of the act is saved. Too many laws have been passed in this way for the court to adopt at this late day so strained a construction of the constitution.

GILFILLAN, C. J. Action to enforce a mechanic's lien under Laws 1889, ch. 200. The appellants object that, under the constitutional provisions with respect to the passage and approval of bills,

that chapter did not become a law. It originated in and passed the house, and going to the senate was amended and passed, and returned to the house, where, as amended, it was passed April 19th. April 22d it was reported enrolled, and sent to the governor. April 23d the legislature adjourned. April 24th the governor approved it. The objection is that, the bill not having passed during the last three days of the session, the governor had no constitutional power to approve it, and, its return to the house being prevented by the adjournment, it failed to become a law. In the ordinary course of enacting and approving laws, as prescribed in the constitution, article four, (4,) section eleven, (11,) after passing both houses a bill is to be presented to the governor. If he approve, he shall sign and deposit it in the office of the secretary of state, and notify the house where it originated. It is then a law. If he do not approve, he is to return it, with his objections, to the house where it originated. Then if, upon a reconsideration, it is approved by a two-thirds vote of each house, it becomes a law, notwithstanding the governor's objections. But as the governor might, by omitting to return the bill, deprive the houses of the opportunity to reconsider and pass it over his objections, the section referred to provides: "If any bill shall not be returned by the governor within three days (Sundays excepted) after it shall have been *presented* to him, the same shall be a law in like manner as if he had signed it, unless the legislature, by adjournment within that time, prevent its return, in which case it shall not be a law." Under a provision similar to the foregoing in the constitution of New York, it has been held that the adjournment of the legislature within the three days does not prevent a bill becoming a law, if it be signed by the governor, and that the only effect of such adjournment is to prevent it becoming a law merely by failure of the governor to return it, (*People* v. *Bowen,* 30 Barb. 24, 21 N. Y. 517;) and also a like provision in the constitution of Illinois, (*Seven Hickory* v. *Ellery,* 103 U. S. 423.) This is upon a proper rule of construction. The part of the sentence following the word "unless" relates to and qualifies the preceding part of the sentence, and does not affect the power and duty of the governor to sign the bill if it meets his approval. Immediately follow-

ing the above-quoted part of the section is: "The governor may approve, sign, and file in the office of the secretary of state, within three days after the adjournment of the legislature, any act *passed* during the last three days of the session, and the same shall become a law." This does not confer on the governor power to approve bills after the adjournment, for he would have it without the clause, but it is a limitation upon his power, restricting its exercise to the period of three days after the legislature shall adjourn. What in this clause is the meaning of the word "*passed?*" Ordinarily a bill is said to have passed one of the houses when the final vote in its favor in that house has been taken and announced. Is that the sense in which the constitution is to be understood when speaking of the passage of bills, not by one house, but by the legislature, with reference to action upon them by the governor? For that purpose, is a bill deemed to be passed so long as the house in which it is has control over it, and may reconsider its action upon it? We think not. Section twenty-one (21) of the article provides: "Every bill having passed both houses shall be carefully enrolled, and shall be signed by the presiding officer of each house." When that is done the bill is in condition to be sent to the governor for his action upon it. It is then to be deemed as passed for that purpose. That the word "passed," as used in the constitution, may sometimes include the enrollment and signature by the presiding officers and sending to the governor, is apparent from section twenty-two (22) of the article, which provides that no bills shall be *passed* on the day of adjournment, and continues: "But this section shall not be so construed as to preclude the enrollment of a bill, or the signature and passage from one house to the other, or the reports thereon from committees, or its transmission to the executive for his signature,"—provisions wholly unnecessary if the word could not include those things. The inconvenient consequences that might arise from using the word in section eleven (11) to indicate merely the final vote upon a bill are so manifest as to furnish a strong presumption that it is not used in that limited sense. It must happen at every session that the final vote on many bills is taken more than three days before the day of adjournment, but which bills it will be im-

possible to have enrolled and signed, so that they may be sent to the governor, until less than three days remain. In such cases, if the time of passing them is to be computed from the vote, many of them must be lost for want of time on the part of the governor to examine them while the legislature is in session. We think that bills enrolled during the last three days of the session are within the meaning of the clause authorizing the governor to sign them within three days after the adjournment.

The complaint alleges that all the material for which the lien is claimed was sold and delivered by plaintiffs to the defendant Sewell, who was contractor for the owner, to be used in the construction of the building; and the court below finds this allegation to be true, but finds that two items of the material were not actually used in the construction of the building, and, as a conclusion, that plaintiffs were not entitled to a lien for those two items. As the lien statement was not filed within the prescribed time after the last of the other items, plaintiffs' entire claim depends on the two items referred to. The question then is, can there be a lien, as against the owner and those claiming under him, for material sold and delivered to his contractor for the purpose of constructing a building, which building is actually constructed or commenced, though the material is not put into it? The case of *Smith* v. *Barnes,* 38 Minn. 240, (36 N. W. Rep. 346,) decided that where material is sold for constructing a building on one lot, (say lot 5,) but no building is constructed on that lot, and it is constructed on another lot (lot 6) not belonging to the owner who purchased the material, and the material is used in that building, no lien can be claimed against the former lot; and the decision is put, in part at least, on the proposition that the statute contemplates that there must be a building on the land. Here there was a building, but the material furnished for it was not all put into it. The statute (Laws 1889, ch. 200, § 1) provides that "whoever * * * furnishes skill, material, or machinery * * * for the erection, alteration, repair, or removal of any house * * * shall have a lien to secure the contract price or value * * * upon such house, * * * and upon the right, title, and interest of the owner thereof in and to the land, upon which the same is situate." The lien state-

ment is to be filed "within ninety days from the time of furnishing of the last item." Is the material deemed to be furnished under these provisions only from the time when the owner or contractor purchasing the material actually incorporates it in the building? Must the material man await, before filing his statement, the action of the purchaser? We think not. In the ordinary understanding of the terms, "furnish for the erection of," etc., the furnishing the material is complete when it is sold and delivered for the purpose of the erection; and in *Howes* v. *Reliance Wire-Works Co.*, 46 Minn. 44, (48 N. W. Rep. 448,) it was held to be furnished when prepared for the building, though still in the possession of the party furnishing it, he being ready and willing to put it into the building according to his contract. But the question involved was decided in *Hickey* v. *Collom*, 47 Minn. 565, (50 N. W. Rep. 918,) at the present term of the court; the difference between the cases being that in this the material was sold and delivered to a contractor, while in that it was sold and delivered to a vendee. But in both, the material was sold and delivered for the construction of a building in process of construction, and was not put into it. Cases may of course occur where a dishonest contractor may divert to other purposes material sold and delivered for the purpose of constructing a building. But ordinarily, in such a case, the one who accredits the contractor, and enables him to purchase on the credit of the building and land, should suffer, rather than the innocent seller of the material.

. Order reversed, and the court below will enter judgment on the findings for the lien claimed.

(Opinion published 51 N. W. Rep. 224.)