[No. 29894. *En Banc.* January 10, 1947.]

WALTER V. KOLOSOFF, *Respondent,* v. LAURI N. TURRI *et al., Appellants.*[1]

[1] Reported in 176 P. (2d) 439.

*Frank Harrington,* for appellants.

*Hyland, Elvidge & Alvord,* for respondent.

SIMPSON, J.—The judgment in this case was reversed. *Kolosoff v. Turri,* 25 Wn. (2d) 452, 171 P. (2d) 234. A rehearing was granted, and the cause was argued to the court sitting *En Banc.*

The majority of the court has arrived at a conclusion different from that of the Department. Although the facts are set out in the opinion, it is proper to note that respondent testified that his information relative to the completion of the policy of title insurance was not given to him until about the eighteenth day of May; and, further, that the written agreement provided that time was of the essence of the contract.

Appellants advance two arguments in this case. The first is that they furnished a title report and were not in default in that regard. The second is that respondent was estopped by his conduct from asserting that the report was not furnished.

Respondent, on the other hand, takes the position that the provision in the contract relative to the furnishing of the policy of title insurance was a condition precedent, and that appellants did not comply with the condition by delivering the policy to respondent within thirty days after April 23, 1945.

It is clear that the furnishing of the policy was a condition precedent, and that, if it was not furnished within the thirty-day period, respondent was at liberty to cancel or withdraw from the contract. This conclusion compels

a determination of the meaning of the word "furnish" as used in the contract entered into by appellants and respondent.

Several decisions of the courts of sister states indicate the proper rule of law that should be applied in this case.

The contract in *Kennedy v. Dennstadt*, 31 N. D. 422, 154 N. W. 271, decided by the supreme court of North Dakota required the seller to *"furnish* the buyer with an abstract of title within ninety days."  The court used the following language in considering and deciding the case:

"This abstract, it will be observed, was to be furnished almost two months before plaintiff was required to make the next payment on the contract.  So far as the plaintiff was concerned, nothing further was required to be done by him until this abstract was furnished.  It seems clear that this condition or stipulation in the contract is not in any sense dependent upon, or concurrent with, any other clause or stipulation, as the time within which the abstract was to be furnished is entirely different from that fixed for the performance of any other act under the contract. The respondent alone was required to act.  The clause could not be intended for the benefit of the defendant; but obviously it must have been intended solely for the benefit of the plaintiff.  Plaintiff had already paid $1,000, without any evidence of defendant's title to the premises; but before making the next payment (the largest provided for in the contract) he was to receive an abstract 'showing good and merchantable title.'  . . .

"It seems quite clear to us that the furnishing of the abstract was a condition precedent.  It was not to be performed at the same time that any other act was to be performed.  The defendant agreed to perform this within a stipulated time, which was so fixed as to give plaintiff adequate opportunity to examine and investigate the title before the next payment came due.  Did this happen as a matter of chance, or did the parties have some purpose in view?  This court cannot presume that parties enter into written contracts regarding a matter of this importance, and use language idly or without purpose.  The clause providing for the delivery of an abstract is made co-ordinate with the clause providing for the delivery of a deed at a subsequent date.  The defendant himself recognized the duty incumbent upon him to furnish an abstract comply-

ing with the terms of the contract. The parties by their own construction of the contract have recognized the clause relative to furnishing an abstract as being a condition precedent, rather than a condition concurrent and mutual with the payment of the $3,000 on March 1, 1913, and the delivery of possession following such payment."

In *Dudycha v. Brennan,* 196 Iowa 1065, 195 N. W. 991, the supreme court of Iowa had before it a case involving a contract for the sale of land in which the seller agreed to *furnish* an abstract of title. The court said:

"We need not cite authorities to the point that, where the payment of the purchase price is conditional upon the vendor's furnishing an abstract showing a good and merchantable title, an action for specific performance *will not lie until the required abstract is tendered.*" (Italics ours.)

The contract in question in *Ludwig v. Hall,* 234 Mich. 478, 208 N. W. 436, provided for "an abstract to be *furnished* showing a marketable title." The abstract was neither delivered nor tendered. In passing upon the question, the supreme court of Michigan stated:

"The provision of the contract with reference to an abstract showing a merchantable title, fairly construed in the light of the context, was that plaintiffs should furnish such an abstract, and that defendants should have a reasonable time thereafter to have it examined by someone skilled in the business before defendants were obliged to pay the $5,000. It was a condition precedent. 39 Cyc. p. 1516. This plaintiffs did not do. There was some effort made by defendants to assist in ordering the abstract, presumably because defendants lived in the city and the plaintiffs in the country. The fact remains, however, that the abstract was never tendered to defendants. Along in November the plaintiffs received the abstract, but refused to show it to the defendants, claiming at the same time that the option had expired. Until the abstract was tendered defendants were not in default. Suppose on this state of facts plaintiffs had attempted to enforce specific performance? Could they have succeeded in a court of equity unless they showed that they had tendered the abstract in accordance with the contract? Defendants were not bound to pay the $5,000 until plaintiffs tendered the abstract. The fact that the 90 days had expired did not relieve plaintiffs from that duty."

*Carrabine & Co. v. Cox,* 136 Mo. App. 370, 117 S. W. 616, is another case dealing with the meaning of a contract to *furnish an abstract of title.* In that case, the sellers sued the buyers upon promissory notes given as part payment for the property. The defense tendered was lack of consideration. It appears that, under the contract of sale, the owners were given till the twelfth day of October, 1905, to *furnish an abstract* showing a good and merchantable title to the land. They failed to tender the abstract at that time. The contract also provided, as does the contract in the instant case, that time was the essence of the contract. The court held as follows:

"Time being the essence of the contract and plaintiffs having failed in every important particular to offer to perform at the time fixed for such performance and defendant not having waived such condition the plaintiffs are not entitled to recover, and the judgment of the court should be upheld. 'Parties are bound by their contracts and cannot after committing a breach justifying an abrogation of the contract, either recover damages for such breach or enforce the contract.' [*Sick v. Insurance Co.,* 79 Mo. App. 609.]"

In *Drury v. Mickelberry,* 144 Mo. App. 212, 129 S. W. 237, it appears that a written contract provided that the owner of land agreed to *furnish an abstract to the buyer.* This he did not do, and the Missouri court of appeals in referring to the situation stated:

"But however that may be, there is an insurmountable defect in defendant's defense on other considerations. He contracted to *present plaintiff with a complete abstract* showing title in himself. This abstract, of course, must be *presented,* examined and found sufficient before plaintiff could be required to accept his deed." (Italics ours.)

In *Matheson v. C-B Live Stock Co.,* 176 S. W. (Tex. Civ. App.) 734, it was held that, where a contract for the conveyance of land required the purchaser to pay the remaining price within a given time and also obligated the vendor to *furnish* an abstract of title within a reasonable time, the furnishing of the abstract was a condition precedent to the vendor's right to demand payment, and the purchaser's

failure to pay the consideration was no ground for forfeiture where it appeared that the vendor had not *delivered* the abstract, the court stating:

"Appellant not being required to make the deferred payment until an abstract had been *tendered* him in accordance with the contract, he was not in default, and before appellee could rescind by suit it must offer to refund the purchase money already paid." (Italics ours.)

*Carver v. Van Arsdale,* 312 Ill. 220, 143 N. E. 579, was an action for specific performance of a contract which provided "$6,000 to be paid in cash March 1, 1921, on which date a warranty deed was to be given and an abstract *furnished* by the Carvers [sellers]." In denying the right of vendors to enforce the contract, the court stated:

"It is evident that Carver was not prepared on March 1 to complete his contract. He did not have an abstract with him and none was tendered. While Haycraft, the attorney, sent appellee an opinion on January 26 advising him as to the condition of the title, yet under the terms of the contract an abstract was to be delivered to appellee on March 1. Such was not done, nor was the same done on the following day when Carver tendered a deed and mortgage. This in itself is enough to defeat the right of appellants to specific performance. A party seeking to compel specific performance is required to show that he has been in no default by failing to perform his part of the agreement, and that he has taken all proper steps towards performance on his part or can show a reasonable and just excuse for nonperformance. [Citing cases.]

"Appellants contend that they could not furnish the abstract on March 1 because it was in control of the mortgagee, as appellee knew, and that appellee had had ·the advice of counsel selected by him that the title was good. Assuming this to be the fact, though it is controverted by appellee, the contract called for a delivery of an abstract on March 1, and as Carver announced that he expected appellee to complete the contract on that day, the latter was entitled to have the abstract delivered to him on March 1. It appears that there was at least enough controversy over the question as to whether or not the tile-ditch agreement was an incumbrance on the land to cause the matter to be taken to the Supreme Court of Minnesota. It was not

a matter of idle form, therefore, that the abstract should have been *delivered* on that day." (Italics ours.)

The contract considered in *Hayne v. Fenton*, 321 Ill. 442, 151 N. E. 877, provided that the vendor would *furnish* abstracts showing good merchantable title. Passing upon the meaning of the provision, the court stated:

"By the contract the vendor agreed to *deliver* to the vendee an abstract showing a merchantable title, and the furnishing of this abstract of title was a prerequisite to the obligation to perform on the part of the vendee." (Italics ours.)

The supreme court of Idaho had occasion to consider the meaning of a contract to *furnish* an abstract in *Kessler v. Pruitt*, 14 Idaho 175, 93 Pac. 965. In that case, the contract provided that the seller should *furnish* to the buyer upon payment of the balance of the purchase price an abstract of title. In deciding the case, the court held as follows:

"Before the respondents were in a position to declare the contract at an end, and to put the appellant in default, it was necessary for the respondents to *tender an abstract of title* showing clear title, and notify the appellants to make payment within a reasonable time, or the contract would be rescinded by the respondents. The obligation of the appellant to pay the purchase money depended upon the duty of the respondents to tender to the appellant an abstract of title showing clear title. It is not claimed on the part of the respondents that they ever offered to perform the contract on their part with reference to *tendering an abstract of title* showing clear title to the property sold, and without such offer they are not in a position to rescind the contract and defeat the plaintiff's action to compel a specific performance thereof." (Italics ours.)

We find the following definitions of the word "furnish":

"Furnish. One of the most common definitions of the word, both as given in the dictionaries and as employed in popular and general use, is to provide for use." Ballentine's Law Dictionary, p. 538.

"Furnish. To supply; provide; provide for use; deliver, whether gratuitously or otherwise." Black's Law Dictionary (3d ed.) p. 830.

The word "furnish" is a comprehensive term that includes many different ways by which an article may be supplied or delivered by one person to, and accepted by, another. And while the word "furnish" would ordinarily include within its meaning most transactions "showing a sale and delivery of the article sold, yet it probably would not include all sales" such as for instance a sale without actual delivery of the article.

In many cases arising out of contracts other than those to furnish an abstract, the courts have had occasion to determine the meaning of the word "*furnish.*"

A contract in terms to furnish coal on the cars at a particular place is in effect an agreement to there deliver the coal to the buyer. *Watson Coal & Min. Co. v. James,* 72 Iowa 184, 33 N. W. 622.

The contract for goods to be furnished along the line of a certain railroad contemplated their shipment over such railroad, and delivery by it to the purchaser. *Silvestri v. Missocchi,* 165 Mass. 337, 43 N. E. 114.

The word "furnish" as used in a mechanic's lien statute is construed to mean sale and delivery of material. *Burns v. Sewell,* 48 Minn. 425, 51 N. W. 224.

To "furnish" in its ordinary acceptation means to "supply," to "provide for use," which necessarily contemplates the delivery of the article or thing to be used.

The furnishing of the abstract in the case of *Papin v. Goodrich,* 103 Ill. 86, cited in the Departmental opinion, was provided for in the contract of purchase, the pertinent portion of which reads as follows:

" 'SOUTH FRANKLIN STREET, Chicago, Sept. 27, '80
" 'A. E. GOODRICH, ESQ., CITY:

" '*Dear Sir*—From the interviews and conferences I had with your agent, E. Slosson, Esq., and yourself, upon the negotiation for the purchase of the Gardner House property and appurtenances, of which you are the owner, I hereby make you the following proposition: To purchase said property from you for the sum of two hundred and twenty thousand ($220,000) dollars, abstracts of title to be furnished by you, and payments to be made as follows: . . .' "

It will be noted that the furnishing of the abstracts was not a condition precedent. The following excerpt from the opinion reveals the fact that the furnishing of the abstracts had nothing to do with the decision:

"Keyes was notified where the abstract was, and that it could be examined there at any time. No objection was made to this, but Goodrich was notified that he declined to carry the contract out because it was then too late."

In accord with the universal rule prevailing in this country, we hold that, in contracts such as we have before us in this case in which a seller agrees to *furnish* an abstract or policy of title insurance within a definite time, the seller must deliver the abstract or policy of title insurance to the buyer within the time stated in the contract. Further, that if the seller does not so deliver the abstract or policy, the buyer is at liberty to withdraw from the contract and may recover any amount theretofore paid.

It has been argued that respondent was estopped to make any claim under the contract; that he did not make any demand for the title report or offer to fulfill his part of the contract. We cannot find in the conduct of respondent any act which would work an estoppel.

Well-considered authorities everywhere agree that a contract may be so framed that the promises upon one side may be dependent upon the promises of the other. In such cases, the burden is upon the party who has made the dependent promise to comply with his part of the agreement. So it is in this case. Appellants received fifteen hundred dollars from respondent and then promised and agreed to furnish the policy of title insurance within thirty days. The burden of action was upon appellants. It was their duty to act. They knew that time was of the essence of the contract, and that they must perform within the time mentioned in the written agreement. Respondent was not, by the terms of the contract, obligated to perform any act until appellants had complied with the contract by furnishing the abstract. Respondent was entirely within his rights in awaiting the performance of a condition precedent by ap-

pellants, and to withdraw from the contract, and to recover the earnest money paid as soon as appellants defaulted.

The judgment of the trial court was correct and will be affirmed.

MILLARD, C. J., ROBINSON, JEFFERS, CONNELLY, and ABEL, JJ., concur.

MALLERY, J., dissents.

SCHWELLENBACH, J. (concurring)—The earnest money receipt was signed by W. V. Kolosoff as purchaser on April 20, 1945, and the terms thereof were accepted by Lauri N. Turri and Mary W. Turri, sellers, on April 23, 1945. In addition to the terms set out in the Departmental opinion, it provided:

"Purchaser offers to purchase the property on the terms noted and, in consideration of agent refraining from offering said property for sale to any third person within 30 days from date, agrees not to withdraw this offer during said period or until earlier rejection thereof by owner."

And further: "Time is of the essence of this contract."

Immediately upon the acceptance by the sellers, Mr. Gratias, the agent of the sellers, ordered the title report. The report was dated May 7, 1945, and was delivered to Gratias by the title company on either the eighth or ninth. His secretary testified that, immediately upon its receipt, she telephoned Mr. Kolosoff and told him that it had been received by them. This was denied by Mr. Kolosoff, who testified that, when he telephoned Mr. Gratias about May 18th or 19th, the secretary then advised him that they had received the report. The report bears the following notation in the handwriting of Gratias:

"Title Report received May 14, 1945.
"Kolosoff was notified May 15, 1945."

However, he admitted to the court during the trial that he wrote this sometime in June.

Kolosoff testified that, on May 25th, he called Gratias to his home (Gratias testified that it was about the 19th) and told him that he was withdrawing his offer; that he read from the agreement that the title insurance was to be

delivered within thirty days from acceptance of the offer, which was on May 23rd. Gratias denied that Kolosoff mentioned the title report or title insurance. He testified that he had the title report in his pocket that night and did not show it to Kolosoff. Kolosoff never asked for the title report. Gratias never gave it to him; never showed it to him; never offered to give or show it to him. In fact, the first time that Kolosoff ever saw it was when it was produced in court by the defendants at the time of trial. The title report showed outstanding taxes in the sum of $780.61; a real estate mortgage to secure the sum of $19,500; a chattel mortgage to secure the sum of $19,500; and a contract of sale between the then title owners of the property, as sellers, and the Turris, as purchasers. On June 6th, when Kolosoff wrote a formal letter to the Turris withdrawing his offer, the title was not insurable and could not have been made insurable within thirty days of the title report (May 7th).

The question is whether or not the title report was furnished to the purchaser as required in the agreement. It is undisputed that, at the time Mr. Kolosoff was notified over the telephone that the report was in Gratias' office, he said: "That's fine. Thank you very much." Appellants contend that they did all that was required by them; that they bought it and made it available to him; that, when he thanked them and said it was fine, he indicated that he was satisfied and no further action on their part was necessary. Respondent, on the other hand, contends that his response meant no more nor less than that he was pleased that the report had been made and that he soon would have the opportunity to examine it.

Here was a contract involving $55,000. A payment of $23,157 was to be made by June 15th. Surely, the purchaser had a right to assume, when he was notified that a title report was in Gratias' office, that it would be sent to him for his perusal. Appellants agreed to "furnish," within thirty days from date of acceptance of offer, a policy of title in-

surance or a title report. To "furnish" meant to deliver manually. This was not done.

I agree with the majority that the judgment of the trial court was correct and should be affirmed.

STEINERT, J., concurs with SCHWELLENBACH, J.