## Lowrey v. Allstate Insurance Company

*Charles F. Gilchrest*, for plaintiff.

*W. Allan Dill*, for defendant Allstate Insurance Co.

*Mark E. Mioduszewski*, for defendant Firemen's Fund Insurance Co.

ACKER, *J.*, January 7, 1983—This matter comes before this court upon a motion for summary judgment filed on behalf of plaintiff, Lori A. Lowrey, and against both defendants; a motion for summary judgment by defendant, Allstate Insurance Company; and a preliminary objection by Allstate contending that the cross-action of Firemen's Fund against it be stricken, or in the alternative, be required to be amended to be more specific.

A summary judgment may be properly granted only if the pleadings, depositions, answers to interrogatories and admissions, together with affidavits if any, show there is no genuine issue as to any material fact and that the moving party is permit-

ted to judgment as a matter of law: Taylor v. Tukanowicz, 290 Pa. Super. 581, 435 A. 2d 181 (1981); Keating v. Zemel, 281 Pa. Super. 129, 421 A. 2d 1181 (1980); Scheetz v. Borough of Lansdale, _____ Pa. _____, 438 A. 2d 1048 (1982). The rule has also been stated that a summary judgment is proper only if the evidence before the court is such as would warrant granting a defendant's points for binding instruction after trial: Bremmer v. Protected Home Mutual Life Insurance Company, 436 Pa. 494, 260 A. 2d 785 (1970), appeal after remand, 218 Pa. Super. 364, 280 A. 2d 664 (1971). Where it is clear that plaintiffs have not met their burden in responding to the summary judgment motion by demonstrating the existence of evidence and reasonable inferences sufficient to sustain a verdict in their favor, the summary judgment may be properly entered: Community Med. Services v. Local 2665, 292 Pa. Super. 238, 437 A. 2d 23 (1981).

In considering a motion for summary judgment, the court is not to resolve any genuine issue of material fact. Its sole responsibility is to determine whether such an issue exists through construction of Pa.R.C.P. no. 1035: Tom Morello Const. Co., Inc. v. Bridgeport Federal Savings & Loan Association, 280 Pa. Super. 329, 421 A. 2d 747 (1980). All parties have requested summary judgment contending that there are no genuine issues of fact. We agree that there is no genuine issue of fact.

The legal issue is whether or not Fireman's Fund Insurance Company is the primary source of basic loss benefits pursuant to Section 204 of the No-fault Act [40 P.S. Sec. 1009.204(a)(1)].[1] The applicable portion of Section 204(a)(1) reads,

---

1. Act of 1974, July 19, P. L. 489, Art. II, Sec. 204 [40 P.S. Section 1009.204].

"The security for the payment of basic loss benefits applicable to an injury to: (1) an employee, or to the spouse or other relative of any employee residing in the same household as the employee, if the accident resulting in injury occurs while the victim . . . is . . . occupying a motor vehicle furnished by such employee's employer, is the security for the payment of basic loss benefits covering such motor vehicle, or, if none, any other security applicable to such victim."

Through a supplemental brief, Firemen's Fund states its contention, page 2,

" . . . is that the motor vehicle being operated by the plaintiff in the case at bar was not furnished by John Baglier Buick and Cadillac in its capacity as an employer or to Robert Lowrey or any member of his family in his capacity as an employee or their capacity as members of the family of an employee."

The facts upon which the case is determined are as follows: the accident giving rise to this action occurred on January 1, 1981, when a Buick automobile, owned by John Baglier Buick and Cadillac, Inc., driven by plaintiff, Lori Lowrey, was involved in an accident with another vehicle. Firemen's Fund had issued a policy to John Baglier Buick and Cadillac, Inc. providing no-fault basic loss benefits for losses arising out of the operation of the 1980 Buick Riviera automobile involved in this case. Robert Lowrey, the father of plaintiff, Lori Lowrey, was the General Manager of Baglier. Lori was born on July 9, 1962, and was 17 years of age and living in the household of her father at the time of this occurrence. The father was provided a 1980 Buick Riviera by Baglier while Lori's mother, Marlene Lowrey, was furnished a 1980 Buick Regal by Baglier. Marlene Lowrey owned a 1977 Buick Skyhawk insured by Allstate which had been deliv-

ered to Baglier for replacement of a rear window. The work was sublet to an autobody shop and the Buick Skyhawk remained in the custody of Baglier from December 31, 1979, through January 2, 1980. On December 30, 1979, when Robert Lowrey, the Manager, delivered his wife's 1977 Buick for repairs of a broken window, he took from stock an unassigned demonstrator four-door automobile for use of his daughter, Lori. Also, on December 31, 1979, when Robert Lowrey drove his 1980 Buick automobile to Baglier, David DeForrest, an employee of Baglier, notified Robert Lowrey he desired to use a four-door automobile. David DeForrest then drove his assigned 1980 automobile, which was the subject of a Firemen's Fund policy, to the Robert Lowrey residence, leaving the automobile and drove the four-door 1980 automobile away. It was the automobile which had been assigned to David DeForrest by Baglier and with permission of the Manager, Robert Lowrey, left with Mrs. Lowrey that was involved in this accident. Allstate initially paid $362 upon the claim of Lori which they now demand from Firemen's Fund.

By its supplemental brief, Firemen's Fund contends that it is not advancing a position contrary to any of four cases cited by plaintiff and defendant, Allstate: Pennsylvania National Mutual Casualty Insurance Company v. J. C. Penney Insurance Co., 8 D. & C. 3d 265 (1978) is one of the four cases. It is a well-reasoned opinion reasonably close upon its facts. It came before the court on a petition for declaratory judgment. A Scout motor vehicle was in the name of the father's corporate business. It was, however, on occasion, permitted by the father to be used for personal business by the injured plaintiff's mother. It was so used on the day of this accident. The mother was returning from a girl scout outing when she was involved in an accident

driving the International Scout owned by her husband's family business causing injuries to her daughter who was a passenger. The parents also owned a Fiat automobile insured by Pennsylvania National Casualty Company and an Avanti in the father's name alone, also insured by the J. C. Penney Insurance Company. A claim was presented to Pennsylvania National on the Fiat policy. Pennsylvania National Mutual Casualty Insurance Company desired contribution of 50 percent under Section 204(a)(2). The J. C. Penney Insurance Company contended that Section 204(a)(1) required payment to be made under the policy of the Scout vehicle and there is no contribution owing. The court found in its favor. This case involved an interpretation of the word, "furnished" as contended by Firemen's Fund in the instant case. It noted first that by the statute dealing with rules of interpretation [1 Pa.C.S.A. 1903(a)][2] words and phrases are to be construed according to rules of grammar and according to their common and approved usage. The court then turned to the determination of the meaning of the word "furnish." It noted that Black's Law Dictionary defined it as "to supply or provide . . . [t]o deliver whether gratuitously or otherwise . . . [t]o supply or provide in any way other than by sale."[3]

---

2. Act of 1972, Dec. 6, P. L. 1339, 290, Sec. 3 [1 Pa.C.S.A. 1903].

3. There are many other cases similarly construing the word, "furnish" or "to furnish." In Delp v. Bartholomay Brewing Company, 123 Pa. 42, 15 A. 871 (1888) at page 52, "To furnish, in the ordinary acceptance, is to supply or provide;" Tacke v. Hauser, 247 Iowa 465, 74 N.W. 2d 219 (1956) holds that "furnish" means to provide, supply or afford; Drucker v. State Board of Medical Examiners, 143 C. A. 2d 702, 300 P. 2d 197 (1956) states that "furnish" means to supply, provide for use and delivery whether gratuitous or otherwise; Kolosoff v.

The court concluded that were it necessary to determine whether the vehicle was being used in furtherance of the employer's business at the moment of the accident, the purpose and scheme of the act would be compromised. It was also contended that since Mrs. Kaufman, the wife of the owner of the business was not an employee, that the section would not apply. The court concluded that there was no such requirement. We agree with the court's conclusion at page 270,

"As we construe Section 204 the sole and controlling factors are whether the victim is occupying an insured vehicle furnished by an employer and whether the victim is within the group protected by subsection (1), which includes not only an employee, but also his spouse and children residing in the employee's household."

The second case relied upon by plaintiff and defendant, Allstate is Gradler v. Prudential Property and Casualty Insurance Company, 464 F. Supp. 575 (W.D. Pa. 1979). There the president of a corporation permitted an employee to use a truck which was owned individually by the president. In the early morning hours, on the day of the accident, plaintiff-employee, a passenger in the truck which was being driven by a person unknown to the owner, was returning from a party. The truck was insured by Travelers through the owners, Lutz and

---

Turri, 27 Wash. 2d 81, 176 P. 2d 439, 442-3 (1947) holds that "furnish" means to supply, provide for use or deliver; Lumberman's Mutual Casualty Company v. H. W. Underhill Construction Co., 149 Kan. 684, 88 P. 2d 1107 (1939) holds that to furnish means to provide or supply that which is necessary; Williams v. Pipe Trades Industry Program of Arizona, 100 Ariz. 14, 409 P. 2d 720, 724 (1966) states that "furnish" means to provide or supply what is needed, useful or desirable.

his wife. Plaintiff was insured by Prudential. He lived in the home of his parents. The court concluded that Lutz, as president, furnished the vehicle to plaintiff. The fact that Lutz owned the vehicle did not affect the conclusion that Lutz, as the agent of Lutz Builders, furnished the vehicle. Travelers Insurance was held liable while Prudential was dismissed. Attorneys' fees were awarded.[4] The court concluded that the coverage of Travelers, applied to the employee for Sec. 204(a)(1), applies to situations where Workers' Compensation does not apply.

Throughout the brief, and oral arguments, of Firemen's Fund, it is contended that the fact that Lori's father was an employee of the company which had assumed the responsibility for repairing the vehicle owned by the mother, and which furnished the substitute, or loaner, vehicle for Lori's use during the period of repair is merely a fortuity. We can agree that it may be a fortuity, but that does not detract from the conclusion that the vehicle was in fact "furnished" pursuant to Section 204(a)(1) of the Act. [40 Pa.C.S.A. 1009.204]. Not only did defendant, Firemen's Fund, agree in its motion for summary judgment that there was no factual issue, there is no factual issue. Nor do we believe that Firemen's Fund is actually arguing that there is a factual issue. Rather, it states that the court must look at the reality and the substance of the transaction and not attach significance to the fortuity that Lori's father was an employee of Baglier. This we have done, and we conclude that the

---

4. Plaintiff and defendant, Allstate, also rely upon Turner v. Southeastern Pennsylvania Transportation Authority, 256 Pa. Super. 43, 389 A. 2d 591 (1978), and Wagner v. National Indemnity Company, 492 Pa. 154, 422 A. 2d 1061 (1980).

motor vehicle was furnished by Baglier to Lori Lowrey under the act.

Counsel for plaintiff has requested counsel fees, costs and interest. Counsel has filed an affidavit, which has not been controverted, showing costs and expenses in the total amount of $87.25 and a breakdown of time spent in the performance of legal services, in this case 13.2 hours. Plaintiff's counsel fees according to the affidavit are $75 per hour making a total counsel fee of $990 which when added to the $87.25 would make a total claim of $1,077.25.

Firemen's Fund cites Dougherty v. State Automobile Insurance Association, 10 D. & C. 3d 668 (1978). Dougherty states that where an hourly rate of compensation for an insured's counsel would be out of proportion to the amount in dispute, a reasonable fee to be assessed against insurer's no-fault carrier for the overdue payment of benefits will be a flat fee determined by the court. We agree with that position, but find it not to be applicable here.[5]

We agree with the observation in the Pennsylvania No-fault Motor Vehicle Insurance Act, by Shrager, at page 178, that counsel who expends time and effort on behalf of a claimant whose no-fault benefits are overdue is entitled, as a matter of right, to a reasonable attorney's fee based on the time he actually spends. There is no question that the monies are overdue. Nor do we believe that there was any real issue as to whether the monies

---

5. Attorneys' fees have been denied where the case presented was one of first impressions in this state: Lacher v. Liberty Mutual Insurance Co. 29 Cumberland L.J. 27 (1979); Hayes v. Erie Insurance Exchange, Erie Co. No. 1886-A (1976) (May 3, 1979).

were owing. We believe that Firemen's Fund created an obstacle to payment unwarranted by the language of the statute.

Wherefore, we conclude that the amount supported by the affidavit of counsel is reasonable and will be made a part of the order.

The preliminary objection as to the cross-claim of Firemen's Fund against Allstate is now mooted in view of holding that Firemen's Fund is liable.

The remaining issue is whether Allstate may recover upon their counterclaim in this action as a matter of law. Firemen's Fund claims that there are factual issues as to whether Allstate was a volunteer which paid the claim with an awareness of the factual situation. The motion for summary judgment of Allstate recites that the benefits were made through a mistake in fact (sic) law. It is almost incomprehensible that Allstate would make such a payment as a volunteer. There is no affidavit, however, as to why it made the payment other than the allegation contained in the motion for summary judgment. Wherefore, we leave this matter for another day.

Hence, this order.

## ORDER

And now, January 7, 1983, it is hereby ordered and decreed that the motion for a summary judgment of plaintiff, Lori A. Lowrey, against Firemen's Fund Insurance Company is granted. It is hereby ordered and decreed that upon proper praecipe by any party, judgment shall be entered in favor of Lori A. Lowrey, plaintiff and against Firemen's Fund Insurance Company in the amount of $1,160 plus interest. The interest shall be calculated from 30 days after presentment of the claim to Firemen's

Fund Insurance Company, and shall, in addition, enter a judgment in the amount of $990 for attorney's fees and $5 for a police report for a total of $995 against Firemen's Fund Insurance Company for payment to Charles F. Gilchrest, Esq., attorney for plaintiff, Lori A. Lowrey.

The motion for summary judgment of plaintiff, Lori A. Lowrey, against Allstate Insurance Company is denied.

The motion for summary judgment of Allstate Insurance Company against Firemen's Fund Insurance Company is granted as to the liability or payment to plaintiff, Lori A. Lowrey, but the motion for summary judgment for payment of monies paid by Allstate Insurance Company to Lori A. Lowrey of $362 is denied.

This court does not rule upon the preliminary objections by Allstate Insurance Company to the cross-action of Firemen's Fund Insurance Company in view of its other rulings above stated.