[No. 39804.    Department One.    March 27, 1969.]

JOHN E. MILLER et al., *Appellants*, v. MARYSVILLE DEVELOP-
MENT CO., INC., et al., *Respondents.**

*Richard J. Waters* and *Skeel, McKelvy, Henke, Evenson
& Uhlmann,* for appellants.

*McCush, O'Conner & Swedberg,* for respondents.

JOHNSEN, J.†—This is an action by vendors of real estate
against their purchasers to recover upon a purchase money
note and mortgage. The purchasers have cross claimed for
the return of their note and mortgage and the down pay-
ment. The trial court dismissed the claim of the vendors and
granted the purchasers relief. The vendors appeal.

*Reported in 452 P.2d 741.

†Judge Johnsen is serving as a judge pro tempore of the Supreme
Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

There is little conflict as to the facts of this case as determined by the trial court. Respondents made an offer to purchase the subject property, which offer came in the form of a signed earnest money receipt and agreement. The agreement was partly printed and partly typed, appearing to be one provided in blank by a title insurance company in common use within the state of Washington. The offer was dated March 15, 1966 and was accepted by appellants on March 22, 1966.

The typed portion of the agreement described the property sold and the price and manner of payment. The total purchase price was $26,500, payable "$2,500 cash down on or before date of closing, May 1, 1966." A note secured by a mortgage was to be taken in payment of the balance. The printed portion of the agreement required the seller to "make available to purchaser at office of closing agent" a standard form purchaser's policy of title insurance or report preliminary thereto. Taxes for the current year were to be prorated as of closing. The following provision also appears in the agreement:

8. The sale shall be closed in the office of Whatcom County Title Ins. Co. within 10 days after title insurance policy or report preliminary thereto is delivered showing title insurable, as above provided, or after completion of financing, if financing is called for herein, whichever is later, but in any event not later than 120 days from date of this Agreement, which shall be the termination date. The purchaser and seller will, on demand, deposit in escrow with the closing agent, all instruments and monies necessary to complete the purchase in accordance with this agreement; the cost of escrow shall be paid one-half each by seller and purchaser.

The parties agreed that time was of the essence of their agreement. It is stipulated by the parties that the sale was to be closed in the office of Pioneer National Title Insurance Company, successor to Whatcom County Title Insurance Company.

The vendors immediately ordered a title report from Pioneer, and on March 26, 1966 the company issued its

report, delivering one copy to vendors and retaining the remaining copies in their own files. No copy was ever delivered to purchasers. On April 29, a note and mortgage, which had been prepared by vendors, were signed by the purchasers, and on May 2, 1966 these instruments, with a check for $2,500 payable to the title company, were mailed to the vendors. The purchasers also sent escrow instructions addressed to the title company which authorized the company to deliver the check, note and mortgage upon condition it procure and record a conveyance and issue its title policy in usual form. The instructions further provided that the real estate taxes should be prorated as of May 1, 1966, and that if the escrowee was unable to comply with the instructions on or before June 1, 1966, the check and documents were to be returned on written demand.

On receipt of the documents on May 3, one of the vendors delivered them to the title company, together with a deed conveying the property to purchasers. The deed itself bears date of April 29, 1966; the acknowledgment bears the date of May 4, 1966, though it appears the word March had been inserted originally and the word May substituted. The same day on which the title company received the instruments it delivered the note and check to the vendors. It was not until then that the title company knew the name and address of the purchasers. On the following day it wrote purchasers' president a letter enclosing new instructions similar to those previously received, requesting payment by purchasers of escrow fees, recording fee, and prorated taxes. The purchasers never answered this letter.

Nothing further occurred until June 1, 1966, when purchasers made written demand on the title company to return the check, note and mortgage, which demand was refused. On August 4, 1966 the title company filed the deed with the county auditor for recording and the vendors commenced this action. On the following day the title company issued its policy insuring the purchasers' title.

Appellants make one minor assignment of error to the trial court's findings of fact which we do not deem material

to the disposition of this case. In granting relief to purchasers, the trial court concluded that vendors had not complied with the terms of the earnest money receipt and agreement. The trial court reasoned that this determination depended upon the obligations created by the earnest money agreement and the purchasers' escrow instructions; that it was the sellers' obligation to close the transaction before June 1, 1966, and certainly not later than July 15, 1966; and that not having done so, they were in default. The trial court said time was of the essence, the purchasers' motives were immaterial, and, therefore, the purchasers were entitled to a refund of their down payment and the return of their note and mortgage.

Respondents claim that appellants did not keep their agreement in two particulars: they did not make a title policy or preliminary report available and the sale was not closed within 120 days as required by the earnest money agreement. They further claim that the escrowee did not procure and record a deed nor issue a title policy prior to June 1, 1966 as required by the escrow instructions, and that such a failure, either by appellants or escrowee, permitted respondents to rescind the agreement.

■ In *Kolosoff v. Turri*, 27 Wn.2d 81, 176 P.2d 439 (1947) cited by respondents, a purchaser was allowed to recover his down payment because the vendor had not "furnished" a title insurance policy within a limited time. This court then said at 89:

> In accord with the universal rule prevailing in this country, we hold that, in contracts such as we have before us in this case in which a seller agrees to *furnish* an abstract or policy of title insurance within a definite time, the seller must deliver the abstract or policy of title insurance to the buyer within the time stated in the contract. Further, that if the seller does not so deliver the abstract or policy, the buyer is at liberty to withdraw from the contract and may recover any amount theretofore paid.

Whereas "furnish" connotes a delivery or physical transfer of possession, "make available" suggests only that the subject matter be accessible or attainable. We think there

is a clear distinction in phraseology which we may not disregard. The agreement of the parties imposes no burden upon vendors to notify purchasers that the preliminary title report had been prepared by the title company. In this case, such notice would seem to have had little significance because prior to receipt of any such report, the purchasers entrusted their money and documents·to the title company with instructions to deliver them to the vendors upon procuring a deed and issuing title insurance. Purchasers did not rely upon the agreement of vendors to make a title report available; they made the down payment and delivered their note and mortgage, relying upon the title company to protect their interest. Vendors met their obligation to make a title report available when they left a copy in the office of the title company, the place where the sale was to be closed.

■ We come then to respondents' claim that the sale was not closed within 120 days as required by the agreement. The authorities cited by respondents to identify the time of closing are *Lieb v. Webster,* 30 Wn.2d 43, 190 P.2d 701 (1948); *Angell v. Ingram,* 35 Wn.2d 582, 213 P.2d 944, 15 A.L.R.2d 865 (1950); and *Lechner v. Halling,* 35 Wn.2d 903, 216 P.2d 179 (1950). In each of those cases an escrowee had absconded with money deposited by the purchaser, and this court was required to determine who should bear the loss, which necessarily depended on whether a particular sale had been closed. In no case was there a claim that one party was in default entitling another party to withdraw, and we do not consider them apposite, except in regard to the construction of the term "time of closing." In *Lechner* this court, at 919, described the time of closing as "the time when both parties were prepared to deliver all of the items necessary to complete the transaction." The term "parties" relates to the buyer and seller.

It is apparent from examining the record in this case that all of the money and documents required for closing were in the possession of the title company on May 4, 1966. On that date the company wrote the purchasers for funds

required of them but received no response. The company was already committed to issue a title policy as directed by purchasers. Vendors had delivered the deed and there was nothing more for them to do. Vendors' acceptance of purchasers' offer in the earnest money agreement had created binding obligations on the parties. The closing of the sale was thereafter accomplished by the fulfillment of these obligations. *Duprey v. Donahoe*, 52 Wn.2d 129, 323 P.2d 903 (1958).

█ Finally, the trial court concluded that the escrowee's failure to record the deed and issue its title policy, as required by the escrow instructions, also provided an excuse for respondents' withdrawal from the agreement. All the documents were placed in the hands of the escrowee. There was nothing more the vendors could do. It was the obligation of the escrowee, not the vendors, to record the deed and issue a title policy. By accepting purchasers' instructions and disbursing the down payment, the escrowee assumed these obligations. The evidence indicates that the escrowee was waiting to record the deed with a mortgage, because such simultaneous recording entitled purchasers to a special rate.

We see no reason why purchasers should be permitted to rescind because the escrowee failed to perform exactly according to its instructions. As between vendors and purchasers, both parties had fulfilled the obligations created by their contract contained in the earnest money agreement.

We conclude that the trial court erred and that the cause should be remanded with instructions to enter judgment in favor of appellants.

WEAVER, HALE, NEILL, and McGOVERN, JJ., concur.