[No. 9444-8-III.   Division Three.   December 14, 1989.]

JACK R. REEVES, *as Trustee,* ET AL, *Plaintiffs,* v. CHARLOTTE E. McCLAIN, ET AL, *Respondents,* WASHINGTON MUTUAL SAVINGS BANK, *Appellant.*

---

*Diane Hermanson* and *Paine, Hamblen, Coffin & Brooke,* for appellant.

*Stanley Schultz, Winston & Cashatt, Lewis Wilson, Joseph P. Delay,* and *Delay, Curran, Thompson & Pontarolo,* for respondents.

GREEN, J.—This case involves an appeal from a decision awarding a purchaser of real estate rescission and damages against the seller who in turn obtained a judgment over and against a bank for negligence.

In 1966 Washington Mutual Savings Bank (WMSB) made a home loan to Frances and Arthur Wilson, secured by a deed of trust. The terms of the note and deed of trust required Mr. Wilson to pay WMSB a monthly installment covering principal, interest and reserves for insurance and taxes.

In 1974 the Wilsons sold the home. The sale agreement was placed in escrow with WMSB. It was directed to first pay the monthly installments on its underlying loan from the purchaser's contract payments and then deposit the remainder in a WMSB reserve account established for the Wilsons. The purchasers were required to pay all taxes and insurance; however, any amount paid from the reserve account for taxes and insurance was to be added back to the principal balance due on the sale agreement by WMSB on its own initiative or by written request of Mr. Wilson.

Until 1984 WMSB automatically added back the amounts paid for taxes and insurance from the reserve account.

In 1983 Charlotte McClain purchased the house and signed the WMSB escrow agreement. In April 1984 WMSB wrote a letter to Mr. Wilson stating it would no longer automatically add back amounts paid from the reserve account. In May the Wilsons submitted a written request to add back the first half of the 1984 taxes. WMSB complied. No further requests were made, and WMSB did not add back the amounts paid from the Wilsons' reserve account for the last half of 1984 and the first half of 1985 taxes.

In 1985 Ms. McClain sold the house to Dr. Elaine Samuel. It is from this transaction that the current litigation stems. On June 29 the parties signed an earnest money agreement requiring Dr. Samuel to pay a purchase price of $69,000; Ms. McClain agreed to deliver title insurance showing the property free and clear of encumbrance, together with a warranty deed to that effect. On July 9 Dr. Samuel and Ms. McClain executed an early possession agreement in which Dr. Samuel agreed to pay $25 per day until closing. The closing attorney requested WMSB to provide him with the payoff figure on the Wilson contract in escrow. WMSB responded. On October 21 the parties appeared for closing and Dr. Samuel provided funds sufficient to close the transaction based on the payoff figures furnished by WMSB. Ms. McClain executed a statutory warranty deed to the property. The closing attorney hand delivered a check for $22,896.49 to WMSB indicating the check was payment in full on the escrow. The deed was recorded that same day.

From these closing funds, WMSB paid one installment on the Wilson/WMSB mortgage, deposited the remaining funds in Mr. Wilson's reserve account and forwarded the documents held in the escrow to the closing attorney. WMSB, however, did not pay its own underlying Wilson mortgage balance of $4,045.20 and did not record a satisfaction of the Wilson/WMSB deed of trust. As a result, the title company could not issue a policy insuring against the

Wilson/WMSB encumbrance. In an attempt to correct the situation, WMSB asked the Wilsons to pay off the loan. The Wilsons declined, requesting the bank provide them with information showing whether taxes in the amount of $651.06 paid from the reserve account had been properly added to the principal contract balance. This issue was not resolved for almost a year.

Meanwhile, Dr. Samuel was living in the house and making improvements. In August 1986 she decided to sell the house and showed it to prospective buyers. On August 29, 1986, the closing attorney wrote her a letter indicating the title was still encumbered by the WMSB deed of trust. On September 19 Dr. Samuel, on advice of counsel, gave notice of rescission to Ms. McClain based on her failure to comply with the earnest money agreement requiring delivery of insured clear title. Ten days later, WMSB filed a satisfaction of the deed of trust. The closing attorney notified Dr. Samuel that title had been cleared and mailed her the recorded warranty deed and title insurance policy. She returned the documents and insisted on rescission.

Dr. Samuel brought this action against Ms. McClain for rescission and in addition sought damages for her losses due to Ms. McClain's failure to perform.[1] Ms. McClain impleaded WMSB and the Wilsons and sought indemnification and attorney fees. The Wilsons cross–claimed against WMSB for indemnification of any judgment entered against them and for attorney fees. WMSB asserted affirmative defenses against Ms. McClain's third party action and requested attorney fees. WMSB likewise asserted a cross claim against the Wilsons for indemnification.

Following a bench trial, the court entered judgment for Dr. Samuel against Ms. McClain, granting rescission and

---

[1]On February 6, 1987 (after the subject property was foreclosed by her mortgage lender), Dr. Samuel filed bankruptcy and a trustee, Jack Reeves, was appointed. For clarity, we will refer to Dr. Samuel as the respondent rather than Mr. Reeves.

awarding Dr. Samuel out–of–pocket expenses in the amount of $12,240.06 plus costs and attorney fees.[2] Ms. McClain was granted a judgment over and against WMSB in the same amount, plus her costs and attorney fees. The Wilsons received a judgment against WMSB for their attorney fees and costs. The court dismissed WMSB's cross claim against the Wilsons and denied its request for attorney fees. WMSB appeals and Ms. McClain cross–appeals.

## THE WMSB APPEAL

Although WMSB raises several issues,[3] one is dispositive. The encumbrance upon the title which led to the rescission of the McClain/Samuel real estate sale arose from the underlying WMSB loan to the Wilsons which was to be paid from the closing proceeds. Had WMSB upon receipt of the $22,896.49 closing funds paid the Wilsons' $4,045.20 loan balance and satisfied the deed of trust, the McClain/Samuel transaction would have closed. WMSB's failure to do so, coupled with the Wilsons' refusal to return enough of the money received by them to pay off the loan, caused the McClain/Samuel transaction to fail and was the vehicle for awarding Ms. McClain damages.

██ ██ An escrow agent owes a fiduciary duty to all parties to the escrow. *National Bank v. Equity Investors,* 81 Wn.2d 886, 910, 506 P.2d 20 (1973). When Ms. McClain

---

[2]Total damages consisted of the following:

| | | |
|---|---|---|
| Carpeting: | | $1,165.00 |
| Materials: | | 769.95 |
| Labor: | | 2,560.00 |
| Closing costs: | | 4,495.11 |
| Early possession: | | 2,250.00 |
| Earnest Money Agreement: | | 1,000.00 |
| | Total | $12,240.06 |

[3]The other issues arise from contentions the court erred in holding WMSB breached its duty of care by (1) failing to add back amounts paid for taxes and insurance from the Wilson/WMSB reserve fund, (2) failing to include "equalizing language" in the escrow instructions, and (3) failing to make full disclosures and render accurate accounts in regard to the add back figures. Since we find WMSB breached its fiduciary duty by failing to pay off the underlying mortgage, we do not reach these contentions.

signed the escrow agreement, she became a party thereto. The obligations of an escrow agent are defined by the escrow instructions. *Pope v. Savings Bank of Puget Sound,* 850 F.2d 1345, 1350 (9th Cir. 1988); *Equity Investors,* at 910. Here, the escrow instructions, in addition to directing WMSB to apply at a minimum the amount necessary to keep the underlying Wilson loan current, authorized WMSB to "receive any payment whether such payment be partial or in full . . .". The closing attorney for the McClain/Samuel transaction requested WMSB to give him the payoff figure, *i.e.,* the amount required to pay the escrow in full. WMSB provided that information and a check was delivered. If there was any doubt concerning the amount or distribution of the payoff, WMSB should have contacted the parties to the escrow to resolve it. The escrow agreement provided for such a contingency:

> If at any time during the life of this escrow any reasonable uncertainty exists, or any dispute shall arise between any of the parties hereto or their respective successors or assigns . . . as to any matter pertaining to this escrow, [the escrow agent] may hold and retain in [its] possession, without liability, any or all of the property or papers referred to in this escrow agreement until such dispute or uncertainty shall have been settled; or [the escrow agent] may . . . interplead or commence any similar action and deposit said property and papers with the Clerk of the Superior Court for Spokane County and thereupon . . . be relieved of all liability with respect thereto;

The delivery of the payoff check and an oral indication it was delivered as payment in full on the escrow placed WMSB on notice it was required to do more than apply a minimum payment to the underlying indebtedness. If a question existed, WMSB was entitled under the terms of the escrow to retain the funds until the matter was clarified. Its failure to either pay off the underlying obligation or retain the funds constituted a breach of its fiduciary duty. The court properly awarded damages to Ms. McClain.

■ WMSB appeals the award of attorney fees to the Wilsons. The award of fees was based on the Wilsons'

status as a prevailing party under RCW 4.84.330.[4] The Wilsons were impleaded by Ms. McClain along with WMSB. They in turn cross–claimed against WMSB for indemnification. Since Dr. Samuel's recovery was eventually assessed against WMSB, the issue of the Wilsons' liability was not addressed. Thus, the Wilsons were a prevailing party only in the sense that WMSB, and not the Wilsons, was assessed the full extent of Dr. Samuel's damages. Given these facts, attorney fees in the Wilsons' favor are not appropriate. Likewise, no equitable grounds for recovery of attorney fees are present. The Wilsons did not enter this suit with clean hands since they inappropriately retained more than their share of the funds. The award of attorney fees to the Wilsons is reversed.

### THE McCLAIN CROSS APPEAL

First, Ms. McClain contends the court erred in granting rescission of the McClain/Samuel contract, asserting Dr. Samuel's remedy, if any, should have been limited to an action at law for damages. There was no error.

■ The first numbered paragraph of the earnest money agreement required Ms. McClain to deliver title free and clear of encumbrances or defects. The second numbered paragraph required her to furnish the buyer with a policy insuring the title was free of encumbrance. It continues, "[i]f title is not so insurable as above provided and cannot be made so insurable, earnest money shall be refunded and all rights of purchaser terminated . . .". This was an agreement that the sale was subject to rescission if Ms. McClain could not deliver insurable title. When she did not do so, Dr. Samuel properly exercised her right to rescind. *See generally Hebb v. Severson,* 32 Wn.2d 159, 201 P.2d 156

---

[4]RCW 4.84.330 provides in part:

"In any action on a contract or lease entered into after September 21, 1977, where such contract or lease specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of such contract or lease, shall be awarded to one of the parties, the prevailing party, whether he is the party specified in the contract or lease or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements."

(1948) (vendee may rescind a contract when the vendor covenants to convey title by warranty deed free of encumbrances and he is unable to do so); Washington State Bar Ass'n, *Real Property Deskbook* § 64.41, at 64–26 (1986).

Second, Ms. McClain contends WMSB's failure to perform as escrow agent is not a ground for rescission, citing *Miller v. Marysville Dev. Co.*, 75 Wn.2d 590, 452 P.2d 741 (1969). *Miller* is factually distinguishable. There, the seller provided title insurance free of encumbrances to the closing agent who in turn failed to record the documents and forward copies to the purchaser. That is different from the situation here where there is a defect in the title, *i.e.*, an encumbrance of record. Ms. McClain was contractually bound to provide insurable title free and clear of encumbrances. She failed to do so over a period of about 11 months. The reason for her inability to deliver clear title does not affect Dr. Samuel's remedy of rescission.

Third, Ms. McClain contends that since the title was cleared within 10 days after the rescission letter and since Dr. Samuel can show no loss from the delay, citing *Kimball v. West,* 82 U.S. (15 Wall.) 377, 21 L. Ed. 95 (1873), the rescission should have been denied. Actually, the delay in clearing title was much longer than 10 days. As the record shows, closing occurred on October 21, 1985, and title was not cleared until September 29, 1986. Ordinarily, the grantor has a reasonable time to perfect title if not specified by agreement. *Peplinski v. Campbell*, 37 Wn.2d 857, 861, 226 P.2d 211 (1951). What is a reasonable time depends upon the facts of each case. The court was correct in finding a reasonable time had expired here. In *Peplinski* a 6–month delay was deemed excessive. Here, the delay was about 11 months.

Fourth, Ms. McClain contends rescission was error based upon the doctrine of merger: "[T]he provisions of a contract for the sale of real estate, and all prior negotiations and agreements, are considered merged in the execution and delivery of the deed." *Peoples Nat'l Bank v. National Bank of Commerce,* 69 Wn.2d 682, 689, 420 P.2d 208

(1966). She claims that by executing and delivering to the closing agent a warranty deed that was subsequently recorded, the provisions of the sale agreement merged into the deed and only an action for breach of contract will lie. We disagree.

■ The doctrine of merger does not apply when collateral requirements exist that are not satisfied by the deed's execution. *See Peoples Nat'l Bank,* at 689–90 (services to be performed subsequent to the execution and delivery of the deed survived the deed's recording); *Dunseath v. Hallauer,* 41 Wn.2d 895, 899, 253 P.2d 408 (1953). Here, the purchase and sale agreement required Ms. McClain to furnish title insurance showing the property free and clear of encumbrances, a requirement that survived the delivery and recording of the deed. She failed to do so prior to rescission; therefore, the doctrine of merger does not apply.

■ Finally, Ms. McClain contends the court erred in awarding Dr. Samuel damages for the money paid under the early possession agreement.[5] She argues the $25 per day paid for early possession was "rent" pursuant to a separate and distinct contract. We disagree. The early possession agreement was part of the purchase and sale. *See Snarski v. Washington State Colonization Co.,* 53 Wash. 221, 101 P. 839 (1909). The basis for rescission was Ms. McClain's failure to provide insurable title as agreed. Thus, Dr. Samuel was without fault. Since rescission is an equitable remedy, the court has more discretion in fashioning its remedy. Washington State Bar Ass'n, *Real Property Deskbook* § 64.32 (1986). By including in its award the money for the agreed early possession, the court was attempting to

---

[5]Dr. Samuel contends this issue was not raised at the trial level and therefore, should not be considered on review, citing *Smith v. Shannon,* 100 Wn.2d 26, 666 P.2d 351 (1983). Review of the record reveals the issue was raised in the motion to dismiss. Consequently, the issue is properly before this court.

restore the parties to the positions they were in prior to the rescinded sale.[6] We find no error.

## ATTORNEY FEES

■ All parties seek fees and costs on appeal. Pursuant to RCW 4.84.330, the prevailing party in an action to enforce or defend a contract is entitled to attorney fees and costs where the contract so provides. Such a provision was contained in the escrow agreement between Wilson/McClain/WMSB and the earnest money agreement between McClain/Samuel. A contractual provision for an award of attorney fees at trial supports an award of attorney fees on appeal. *West Coast Stationary Eng'rs Welfare Fund v. Kennewick*, 39 Wn. App. 466, 694 P.2d 1101 (1985). Therefore, the court properly awarded attorney fees to Dr. Samuel and Ms. McClain; however, the award of fees to the Wilsons, for the reasons noted above, was error.

Affirmed, except as to the award of attorney fees as to the Wilsons, which is reversed. We remand for the determination of attorney fees and costs on appeal as to Dr. Samuel and Ms. McClain.

THOMPSON, C.J., and SHIELDS, J., concur.

---

[6]We also note the presence of another equitable factor: the accumulation of loan payments made by Dr. Samuel during the period of early possession. Dr. Samuel acquired financing to purchase the home and began making payments on that loan in November 1985. Early possession had begun 3 months prior on August 1, 1985. During the early possession period, Dr. Samuel paid a total of $7,524.80 on the loan; however, she did not claim reimbursement from Ms. McClain for this amount. As the remedy of rescission rests largely in the sound discretion of the court, *Hesselgrave v. Mott*, 23 Wn.2d 270, 160 P.2d 521 (1945), and Ms. McClain has not established abuse of such discretion, there was no error in requiring return of the early possession moneys as part of the judgment.