COURT OF APPEALS DIV .
2013 JUN 10 PM 12: 37



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| GBC INTERNATIONAL BANK, a California corporation, | ) ) ) | No. 68240-7-I |
| Respondent, | ) ) ) | DIVISION ONE |
| v. | ) ) | UNPUBLISHED OPINION |
| QUEEN ANNE BUILDERS, LLC, a Washington limited liability company, SEATTLE SIGNATURE HOMES, INC., a Washington corporation, CROWN DEVELOPMENT, INC., a Washington corporation, ANDY RYSSEL, an individual and the marital community of ANDY RYSSEL and RENEE RYSSEL, | ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| CORY J. BURKE and GENEANNE G. BURKE, and the marital community composed thereof, GREG H. BLUNT, an individual and the marital community of GREG H. BLUNT and JILL BLUNT, | ) ) ) ) ) ) | |
| Appellants, | ) ) | |
| JOHN H. BARGREEN, and individual and the marital community of JOHN O. BARGREEN and TERI O. BARGREEN, | ) ) ) | FILED: June 10, 2013 |
| Defendants. | ) ) | |

GROSSE, J. — A bank's action to recover monies from signators and guarantors of an unsecured note is not precluded because those same signators and guarantors also received a separate loan which was secured by a deed of trust on property that the bank judicially foreclosed. Here, the documents clearly showed that the loan at issue was unsecured. Under these circumstances, the

trial court did not err when it ruled that as a matter of law that the foreclosure on the deed of trust did not prohibit the bank from seeking to recover the monies owed on the unsecured loan. Accordingly, we affirm.

In 2007, Queen Anne Builders, LLC (Queen Anne) refinanced property with a $1,515,000.00 loan (Loan 4190) from Shoreline Bank. The loan was evidenced by a business loan agreement executed the same day. As collateral for Loan 4190, Queen Anne granted Shoreline Bank a deed of trust in the underlying real property. Loan 4190 matured on September 8, 2008. Property values had plummeted and the property was appraised at less than the loan's value. Shoreline Bank and Queen Anne executed a change interim agreement extending the maturity of the loan for 60 days to permit Queen Anne to figure out a plan of action.

Shoreline Bank agreed to extend the maturity date of Loan 4190 for a year and a half to May 8, 2010. In return, because the property was appraised at less than the loan's value, the bank required that Loan 4190 be paid down, interest reserves be set-aside during that time, and that all real property taxes be paid current. The bank agreed to issue a second loan for $500,000.00 (Loan 2545) as a line of credit to pay down the Loan 4190 from $1.5 million to bring it line with the loan to value guidelines. Both loans were guaranteed by Andy and Renee Ryssel, Cory and Geneanne Burke, Greg and Jill Blunt, and John and Teri Bargreen (collectively, Burke).[1]

---

[1] John and Teri Bargreen have been dismissed from this suit and are no longer parties.

On April 27, 2010, both loans were in default due to nonpayment. On April 28, 2010, Shoreline Bank filed a complaint against Queen Anne and Burke. On September 24, 2010, Shoreline Bank nonjudicially foreclosed its deed of trust against the property on Loan 4190.[2] On October 1, 2010, Washington State closed Shoreline Bank and the Federal Deposit Insurance Corporation (FDIC) was appointed as receiver. On the same date, GBC International Bank (GBC) became the successor in interest to the FDIC.

At the close of a five day jury trial, the trial court ruled "as a matter of law that the foreclosure on the 4190 [Loan] did not foreclose the 2545 [Loan]." The remaining issues were sent to the jury which found that there was no fraud when the loan was made, that GBC was not estopped from enforcing the loan against the defendants, and that there were no misrepresentations. After the jury's verdict in favor of GBC, the trial court issued a judgment in the amount of $578,465.18. Burke appeals.

Burke first argues that the trial court erred in holding that the foreclosure on Loan 4190 did not preclude the bank from bringing this action to recover on the promissory note for the $500,000.00 in Loan 2445. There is no merit to this contention. The loan documents are clear that only one loan, Loan 4190, was collateralized by the deed of trust. Loan 2545 was a separate, unsecured line of credit guaranteed by Burke. Documents for the second loan clearly indicate that it was unsecured and that the property was not listed as collateral. Unlike Loan

---

[2] At the time of the trustee's sale, the outstanding balance owed to Shoreline Bank was $1,117,316.14. Shoreline Bank bid $900,000.00, took over the property, and later sold it for $490,000.00, leaving a loan deficiency of $217,316.00. (September 24, 2010).

3

4190, Loan 2445's promissory note for the $500,000.00 listed no collateral. The change in terms agreement with Queen Anne specifically states that the $500,000.00 line of credit is unsecured. The deed of trust does not apply to Loan 2545 because the document granting the line of credit for Loan 2545 did not reference that it was secured by the real estate. The trial court's ruling was correct.

Instruction

Burke next argues that the court erred in refusing to give his proposed jury instruction on estoppel.[3]

Burke proposed the following jury instruction:

> Washington law does not permit a party to enforce an oral agreement to loan money offensively against a bank in order to make the bank loan money. However, Washington law does not prevent a party from relying upon an oral agreement to loan money defensively to excuse performance.

The court rejected this instruction because it was unnecessarily complicated and difficult for a jury to understand the concept of using a statute defensively as opposed to offensively. Instead, the trial court offered Instruction 14, which listed the elements of estoppel as they applied to the present case.[4] Additionally, Instruction 13 provided:

---

[3] "A trial court's decision to give a jury instruction is reviewed de novo if based upon a matter of law, or for abuse of discretion if based upon a matter of fact." Kappelman v. Lutz, 167 Wn.2d 1, 6, 217 P.3d 286 (2009). "Instructions are sufficient if they permit each party to argue his theory of the case, are not misleading, and when read as a whole, properly inform the trier of fact of the applicable law." Farm Crop Energy, Inc. v. Old Nat'l Bank of Washington, 109 Wn.2d 923, 750 P.2d 231 (1988).

[4] The doctrine of equitable estoppel applies when a party acts to his prejudice in reasonable reliance on the assurances of another. Equitable estoppel requires

A party is not allowed to make a claim that contradicts or repudiates its earlier statement, admission, or conduct on which another has reasonably relied, if the relying party would be injured by such contradiction or repudiation. This is known as "estoppel."

Instructions 8 and 9 were identical to 6A Washington Practice: Washington Pattern Jury Instructions: Civil 301.06, 301.05 (6th ed. 2012). The instructions permitted the jury to decide the intended meaning of the contract language and whether it was integrated.[5]

---

clear, cogent, and convincing evidence of "(1) a party's admission, statement or act inconsistent with its later claim; (2) action by another party in reliance on the first party's act, statement or admission; and (3) injury that would result to the relying party from allowing the first party to contradict or repudiate the prior act, statement or admission." Kramarevcky v. Dep't of Soc. & Health Servs., 122 Wn.2d 738, 743, 863 P.2d 535 (1993).

[5] Instruction 8 provided:

A contract is to be interpreted to give effect to the intent of the parties at the time they entered the contract.

You are to take into consideration all the language used in the contract, giving to the words their ordinary meaning, unless the parties intended a different meaning.

You are to determine the intent of the contracting parties by viewing the contract as a whole, considering the subject matter and apparent purpose of the contract, all the facts and circumstances leading up to and surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of the respective interpretations offered by the parties.

(Emphasis added.)

And Instruction 9 provided:

If you find that all of the provisions of an [sic] agreements between GBC International Bank and the Defendants are contained in a single written document, and that the document was intended by the parties as their final agreement on the subjects addressed in it, then you may not consider evidence outside of the written document to add to, subtract from, vary, or contradict that written document.

However, if you find that such written document was not intended to be a complete expression of all of the terms agreed upon by those parties, that is, that the document does not contain

These jury instructions permitted Burke to argue his theory of the case that GBC was estopped from enforcing the guaranties because they were given only after misrepresentations from Shoreline Bank that it would provide a construction loan. Testimony from several loan officers and representatives from the bank refuted this proposition. Burke extensively cross-examined the bank's witnesses and put forth his own testimony from the guarantors that they were induced to sign the guarantee loans by the promise that a construction loan would be forthcoming, which would buy out their interest. That matter is one of fact for the jury which had adequate guidance.

In addition, we reject Burke's assertion that his instruction language was necessary because he was prejudiced by language contained in the bank's notice of final agreement that "[o]ral agreements or oral commitments to loan money, extend credit, or to forebear from enforcing repayment of a debt are not enforceable under Washington law."[6] Such language is required by statute for a credit agreement to be enforceable against a creditor.[7]

---

all of the terms of their agreement, then you may also consider evidence of the circumstances surrounding the making of the agreement to supply additional terms of the agreement between the parties, but only if they are not inconsistent with the provisions of the written document.

A contract that was intended by the parties as their final agreement on the subjects addressed therein may nevertheless be unenforceable due to fraud or equitable estoppel.

(Emphasis added.)

[6] RCW 19.36.140.

[7] RCW 19.36.110 provides that "[a] credit agreement is not enforceable against the creditor unless the agreement is in writing and signed by the creditor." See also RCW 19.36.140 (setting forth the requirements for notices to be included in credit agreements).

Judgment on Jury Verdict

The jury found in favor of GBC and in a special verdict form awarded the bank "[t]he dollar amount that is currently due on Loan No. 2545."[8] GBC moved for an order of entry of judgment for the amounts owing on the construction loan together with interest. The trial court issued a judgment in the amount of $578, 465.18.

The actual amount owed was not in dispute.[9] The promissory note provided that the principal amount was $500,000.00, specified the method for

---

[8] In a special verdict form, the court submitted the following question to the jury:

> **Question 8:** If you find that Queen Anne Builders, LLC or any guarantor is liable to GBC International Bank on Loan No. 2545, what is the amount of damages?
>
> _____
> *(Write the dollar amount that is currently due on Loan No. 2545)*

The jury did not write in a dollar amount, but instead wrote on the line provided: "The dollar amount that is currently due on Loan No. 2545."

[9] After the verdict was delivered, outside the jury, the following colloquy occurred:

> THE COURT: I assume that everyone agrees that they wrote the amount due on the loan and that we all agree what that amount is[.] The actual dollar amount isn't in dispute.
>
> MR. WILLIG: Yeah.
>
> MR. GOSS: It's true.
>
> THE COURT: Okay.
>
> MR. GOSS: Although we do have the 22,000 that's out there that's --
>
> THE COURT: It wasn't actually submitted to them. It wasn't argued to them.

calculation of interest, and the amount owed is merely a simple mathematical calculation. Courts have entered judgment in the proper amount where the amount, as here, is a matter of mere calculation.[10]

Dawn Beagan, Vice President of Credit Administration, stated that the total amount currently due for Loan 2545 was $574,479.16, including the principal balance of $500,000.00, accrued interest of $74,479.16 as of October 25, 2011, at the per diem interest rate of 7 percent (which equals the per diem amount of $97.22).

Burke argues that there was a discrepancy of some $22,684.00. Burke arrives at that figure from the testimony of Kathleen Bennett, Andy Ryssel's bookkeeper, who stated that in her opinion the first loan only needed to be paid down to $1,140,000.00, instead of the $1,117,316.14.[11] But that $22,684.00 was in fact applied to the first loan as evidenced by Bennett's response to a query from counsel whether she meant that Queen Anne did not get the benefit of that $22,684.00.

---

MR. BUTLER: Your Honor, I think we'd be happy to rely on the testimony as presented at trial by Dawn Beagan. I believe that amount was the same as was quoted in closing argument, that if there's any question that amount was testified to.

THE COURT: Well, I'll let you have your further discussion about it, but within the week -- actually, by next Wednesday, if possible, if you could submit a judgment on verdict, okay?

---

[10] See Buffington v Henton, 70 Wash. 44, 47, 126 P. 58 (1912) (a general verdict finding a breach of contract against one party, permitted the court to enter judgment to the proper amount as fixed by the contract itself, where such amount is a matter of mere calculation).
[11] $375,000.00 was paid to Loan 4190, reducing its total amount due and owing to $1,117,316.14.

Oh, of course not. No, what happened was they needed to reduce the loan to one million 140 and they were only supposed to use enough to get the loan, the first loan, to that one million 140. It didn't require the full 375,000 to get to that amount. If they had only reduced it to one million 140 there would have been $22,000 more available on the second loan to advance for interest.

Moreover, when offering instructions, the parties agreed that the amount was not disputed, only whether GBC was estopped from seeking repayment by the guarantors.

Under RAP 18.1, GBC requests attorney fees on appeal. Because the contract includes a provision for attorney fees, GBC is entitled to fees on appeal as the prevailing party.[12]

Affirmed.

WE CONCUR:

---

[12] See Reeves v. McClain, 56 Wn. App. 301, 311, 783 P.2d 606 (1989) ("A contractual provision for an award of attorney fees at trial supports an award of attorney fees on appeal.").