IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| JOINT APPRENTICESHIP AND TRAINING COMMITTEE OF LOCAL UNION NO. 55, affiliated with the International Association of Sheet Metal, Air, Rail, and Transportation Workers, | ) ) ) ) ) ) | No. 40882-5-III |
| Respondent, | ) ) | UNPUBLISHED OPINION |
| v. | ) ) | |
| AARON JOHNSON, an individual, | ) ) | |
| Appellant. | ) | |

COONEY, J. — Aaron Johnson appeals a trial court order that granted summary judgment in favor of the Joint Apprenticeship and Training Committee of Local Union No. 55 (JATC) and denied his motion for summary judgment dismissal of the JATC's complaint.

This appeal concerns five "Education Loan Agreements" (ELA) between Mr. Johnson and the JATC. Mr. Johnson used the loans to pay for apprenticeship training in

the sheet metal industry.  Mr. Johnson completed the training in 2022 and maintained employment under Local 55 until later joining Local Union No. 598 (Local 598).

The ELAs offered Mr. Johnson the opportunity for loan forgiveness conditioned on him remaining in qualifying employment or not being employed in the sheet metal industry outside of a collective bargaining agreement.  The ELAs required the loans to be "repaid in full upon . . . the date on which Borrower begins work for an employer, or engages in self-employment, in the Sheet Metal or Industry that is not Qualifying Employment."  Clerk's Papers (CP) at 23.

The JATC alleged Mr. Johnson's loans became due when he accepted employment with Local 598.  According to the JATC, Mr. Johnson's employment with Local 598 and subsequent failure to pay the loans constituted a breach of the ELAs.  Consequently, the JATC sued Mr. Johnson for breach of contract.  Thereafter, the parties filed competing motions for summary judgment.  Following a hearing on the motions, the trial court denied Mr. Johnson's motion and granted the JATC's motion, entering judgment against Mr. Johnson.

Mr. Johnson appeals, arguing the trial court erred in its interpretation of the ELAs. We agree with Mr. Johnson, reverse the order and judgment in favor of the JATC, and remand for the trial court to enter judgment in favor of Mr. Johnson, including reasonable attorney fees and costs.

2

BACKGROUND

Mr. Johnson was enrolled in an apprenticeship program sponsored by the JATC, which is affiliated with the National Association of Sheet Metal, Air, Rail, and Transportation Workers (SMART) between 2017 and 2022. Mr. Johnson entered into five ELAs with the JATC and the International Training Institute for the Sheet Metal and Air Conditioning Industry (ITI) [1] to assist with funding for his education, training, and the materials necessary for him to complete an apprenticeship training program in the sheet metal industry. Mr. Johnson was also given Loan Disclosure Forms (LDF) with each ELA. The terms in each of the ELAs were virtually identical.

> The ELAs offered Mr. Johnson loan forgiveness:
>
> 4. **Forgiveness of Loan:** Beginning with the year following the completion of the full training program which the instant Loan is intended to fund in whole or in part, ten percent (10%) of the Loan amount will be forgiven at the conclusion of each year that the Borrower either worked in Qualifying Employment or did not work for an employer in the sheet metal industry not subject to a CBA covering Borrower.

CP at 28. The LDFs contained similar provisions:

> 3. Loan Forgiveness—Your loan will be forgiven at the rate of 10% for each year in which you either (a) work in Qualifying Employment (i.e., for a sheet metal employer that is subject to a collective bargaining agreement with a SMART affiliated Local Union covering your employment) or (b) do not work for an employer that provides sheet metal services or products and is not subject to a collective bargaining agreement.

CP at 37.

---

[1] ITI assigned its interests in the loan agreements to JATC.

Mr. Johnson completed the training program in February 2022 and maintained employment with Local 55 through April 2023. Thereafter, Mr. Johnson obtained employment through Local 598. Local 598 is not affiliated with the SMART nor is it considered "work in the sheet metal industry" as defined in the ELAs. CP at 88.

The JATC claimed Mr. Johnson's employment with Local 598 constituted a breach of the terms of the ELAs. Specifically, the JATC claimed Mr. Johnson was working in an industry that is not "Qualified Employment" under paragraph 3 because his Local 598 did not have a collective bargaining agreement with the SMART, and the SMART had not "specifically approved" Mr. Johnson to work for an employer who was not affiliated with the SMART. CP at 88. The JATC therefore claimed Mr. Johnson's loans became due under paragraphs 3 and 6 of the ELAs.

The JATC alleged Mr. Johnson breached the ELAs by working in an industry not considered Qualified Employment. Paragraph 3 provides, in part:

> **Repayment:** The Loan plus interest at the interest rate of 10% per annum, to the extent not forgiven, in accordance with the terms below, is to be repaid in full upon the later of: (a) the completion of Borrower's full training program or *(b) the date on which Borrower begins work for an employer, or engages in self-employment, in the Sheet Metal or Industry that is not Qualifying Employment.*

CP at 27 (emphasis added). The ELAs define "Qualifying Employment" as

> employment that is performed under the terms of a Collective Bargaining Agreement between the employer and a Local Union affiliated with the Sheet Metal, Air, Rail, and Transportation International Association ("SMART") or, if specifically approved by the Local Committee, with an employer not subject to a Collective Bargaining Agreement ("CBA").

4

CP at 27-28.  The ELAs define "[W]ork in the Sheet Metal Industry" as

> employment with an employer engaged in any general, mechanical sheet metal, testing and balancing, service work, roofing, residential, sign or food service work in the Sheet Metal Industry, including any work covered by the Constitution of SMART.

CP at 27.  The JATC further claimed Mr. Johnson's employment also breached paragraph 6 of the ELAs.  Paragraph 6 provides:

> Breach of Agreement:  It shall constitute an immediate breach of this Agreement and immediate payment of the amount of the loan outstanding . . . shall be required if Borrower *accepts or continues in employment in the Sheet Metal Industry that does not constitute Qualified Employment.*

CP at 34 (emphasis added).  Under paragraph 7.1, a "fail[ure] to repay the Loan when due, as provided in paragraph 3 and/or . . . paragraph 6" results in "all amounts due and owning on the Loan . . . becom[ing] immediately due and payable."  CP at 28.

The JATC filed a complaint on December 14, 2023, alleging Mr. Johnson had breached the terms of the ELAs.  Thereafter, Mr. Johnson filed a motion for summary judgment dismissal of the JATC's complaint.  In it, Mr. Johnson argued that he was not in breach of the ELAs and should continue to benefit from loan forgiveness because he never worked for an employer in the sheet metal industry that was not subject to a collective bargaining agreement.  The JATC filed a cross-motion for summary judgment.  The JATC alleged Local 598 was not affiliated with the SMART and was, therefore, not "Qualified Employment."  CP at 88.

After a hearing on the competing motions, the court denied Mr. Johnson's motion and granted JATC's motion. It also entered a monetary judgment in favor of the JATC that included attorney fees and costs.

Mr. Johnson timely appeals.

ANALYSIS

Mr. Johnson argues the trial court erred in interpreting the ELAs and in granting the JATC's motion for summary judgment and in denying his motion. We agree with Mr. Johnson.

A trial court's ruling on summary judgment is reviewed de novo. *SentinelC3, Inc. v. Hunt*, 181 Wn.2d 127, 140, 331 P.3d 40 (2014). The appellate court engages in the same inquiry as the trial court and views all facts and reasonable inferences from the facts in the light most favorable to the nonmoving party. *Id.* "Summary judgment is appropriate 'if the pleadings, depositions, . . . together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Clements v. Travelers Indem. Co.*, 121 Wn.2d 243, 249, 850 P.2d 1298 (1993) (quoting CR 56(c)). "A material fact is one that affects the outcome of the litigation." *Owen v. Burlington N. & Santa Fe R.R. Co.*, 153 Wn.2d 780, 789, 108 P.3d 1220 (2005). Absent supporting evidence, bare assertions of a genuine issue of material fact are insufficient to defeat summary judgment. *Trimble v. Wash. State Univ.*, 140 Wn.2d 88, 93, 993 P.2d 259 (2000).

"Washington follows the objective manifestation theory of contract interpretation, under which courts focus on the 'reasonable meaning of the contract language to determine the parties' intent' at the time they entered into the agreement." *Raab v. Nu Skin Enters., Inc.*, 28 Wn. App. 2d 365, 389, 536 P.3d 695 (2023), *aff'd*, 565 P.3d 895 (Wash. 2025) (quoting *Viking Bank v. Firgrove Commons 3, LLC*, 183 Wn. App. 703, 713, 334 P.3d 116 (2014)).  Our courts declare the meaning of what is written rather than what was intended to be written. *Washington Prof'l Real Est. LLC v. Young*, 190 Wn. App. 541, 549, 360 P.3d 59 (2015).  Courts generally give some lawful effect to each provision of a contract rather than finding some language ineffective and meaningless. *Raab*, 28 Wn. App. 2d at 389.  We therefore read contracts as a whole and interpret the language contained therein in the context of other provisions. *Id.*

Words in a contract are given their ordinary and generally accepted meaning and connotation unless the parties or the dictates of the contract have otherwise defined a different meaning. *Cronin v. Cent. Valley Sch. Dist.*, 23 Wn. App. 2d 714, 755, 520 P.3d 999 (2022).  Language in a contract is ambiguous if it is susceptible to more than one reasonable interpretation. *Kut Suen Lui v. Essex Ins. Co.*, 185 Wn.2d 703, 712, 375 P.3d 596 (2016).  Where provisions of a contract are not merely ambiguous but actually conflict, we construe them so as to harmonize them with one another. *Farmers Ins. Co. of Wash. v. USF & G Co.*, 13 Wn. App. 836, 840, 537 P.2d 839 (1975).  Courts must generally respect and ordinarily apply accepted rules of grammar and punctuation when

construing contracts.  *See Wilson v. Key Tronic Corp.*, 40 Wn. App. 802, 808, 701 P.2d 518 (1985).

This appeal hinges on interpreting paragraph 3 of the ELAs.  The JATC successfully argued before the trial court that repayment would be due "upon the later of . . . the date on which Borrower begins work for an employer, or engages in self-employment, in the Sheet Metal or Industry that is not Qualifying Employment."  CP at 27.  The JATC does not argue Mr. Johnson's employment with Local 598 is "employ[ment] in the Sheet Metal Industry."  CP at 88-89.  Nor do the parties dispute that Local 598 "is not subject to a collective bargaining agreement with a SMART Local union."  CP at 134.  Rather, the parties dispute centers around the interpretation of in "the Sheet Metal *or* [*sic*] Industry that is not Qualifying Employment."  Br. of Appellant at 13.

The JATC maintains that Mr. Johnson breached the ELAs when he accepted employment in an "Industry that is not Qualified Employment."  Br. of Resp't at 13.  Mr. Johnson countered that the "or" in "Sheet Metal or Industry" was inadvertently included and renders the sentence nonsensical.  He argues that if the inadvertently included "or" is disregarded, there exists no genuine issue of material fact that he was in compliance with the terms of the ELAs (i.e. he was not employed in the Sheet Metal Industry that is not Qualifying Employment), entitling him to dismissal.  We agree with Mr. Johnson.

The ELAs consistently define terms that begin with a capital letter. Defined terms include: "Borrower," "Lenders," "Training Materials," "Qualified Employment," and "Sheet Metal Industry," among others. CP at 48-52. If we adopted the JATC's interpretation of the ELAs, "Industry" would be the sole term beginning with a capital letter left undefined, creating an inconsistency within the documents. Excluding the disputed "or" results in "Sheet Metal Industry," which is defined and consistently used throughout the ELAs. There is but one reference to "Sheet Metal or Industry." Interpreting the language in the context of other provisions supports the conclusion that "or" was inadvertently included in the ELAs.

Secondly, we "construe contract language in a manner that gives effect to the words used and does not render the chosen language meaningless." *NW. Alloys, Inc. v. Dep't of Nat. Res.*, 10 Wn. App. 2d 169, 189, 447 P.3d 620 (2019). Recognition of the disputed "or" would render other terms in paragraph 3 superfluous. For example, the terms "Sheet Metal" and "Industry" in paragraph 3 would be unnecessary as, under the JATC's interpretation, Mr. Johnson's loans would become due if he obtained employment with any employer "that is not Qualified Employment" regardless of whether the employment involved "Sheet Metal" or "Industry." CP at 48.

Lastly, inclusion of the disputed "or" renders the sentence nonsensical and offends the rules of grammar. With the inclusion of "or," a means of Mr. Johnson's loans becoming due would be if he "begins work for an employer, or engages in self-

employment, in the Sheet Metal. . . ." CP at 48. This alternative lacks a complete prepositional phase. One cannot be employed in "the sheet metal." However, disregarding the "or" places the noun "Industry" behind "Sheet Metal," completing the prepositional phrase. Application and respect for the accepted rules of grammar support the disputed "or" being inadvertently included in the ELAs.

In reading the ELAs as a whole, interpreting the language contained therein in the context of other provisions, and in applying the accepted rules of grammar, we deem the inclusion of "or" in paragraph 3 inadvertent.

Mr. Johnson's employment through Local 598 does not create any genuine issues of material fact that trigger either paragraph 3 or paragraph 6 of the ELAs. Stated otherwise, there is no evidence that Mr. Johnson works for an employer in the Sheet Metal Industry that is not Qualifying Employment. We therefore reverse the order and judgment in favor of the JATC, and remand for the trial court to grant judgment in favor of Mr. Johnson.

Mr. Johnson requests attorney fees and costs both below and on appeal. The ELAs provide:

> 7.4. *Attorney Fees and Costs of Recovery*: Borrower understands and agrees that attorney's fees and costs incurred by the . . . Local Committee in connection with the underlying court action for recovery due to Borrower's breach and/or failure to pay the Loan and/or for any collection of a judgment relating to this Agreement shall be awarded and repaid as part of the remedy for Borrower's breach of this Agreement.

10

CP at 28. Under the attorney fees statute, RCW 4.84.330, "the prevailing party in an action to enforce or defend a contract is entitled to attorney fees and costs where the contract so provides." *Reeves v. McClain*, 56 Wn. App. 301, 311, 783 P.2d 606 (1989). On remand, the trial court is directed to award Mr. Johnson reasonable attorney fees and costs.

Mr. Johnson further requests attorney fees on appeal. RAP 18.1 allows a party to request attorney fees and costs if applicable law grants to a party the right to recover reasonable attorney fees or expenses on review. We grant Mr. Johnson attorney fees on appeal under RAP 18.1.

## CONCLUSION

We reverse the order and judgment in favor of the JATC and remand for the trial court to enter judgment in favor of Mr. Johnson, including an award of reasonable attorney fees and costs. We further award Mr. Johnson attorney fees and costs on appeal.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Cooney, J.

WE CONCUR:

_____                    _____
Murphy, J.                                 Staab, A.C.J.

11